(No. 4424. December 14, 1927.)

CHARLES A. PETERS, Appellant, v. J. F. BOW, Special Administrator of the Estate of C. S. RUSSELL, Deceased, Respondent.

[262 Pac. 149.]

SALES OF CORPORATION PROPERTY—CONTRACTS—BREACH—NECESSITY OF PLEADING—WAIVER OF BREACH—DAMAGES—RIGHTS OF PARTIES.

1. It was not within the power of one of corporation's principal stockholders to sell corporation's property, since sale thereof could only be made by corporation.

2. Where defendant agreed that judgment in his favor against plaintiff should be collected only out of net earnings of corporation or out of proceeds of sale of property, if restraining order against disposal of corporation's property sued out by plaintiff constituted a breach of agreement, such fact should have been pleaded as a defense to plaintiff's suit for defendant's breach of contract on account of execution sale of his corporate stock to satisfy judgment.

3. Where parties agreed that action by defendant against plaintiff on note should proceed to judgment, which should be collected only out of net earnings of corporation or proceeds of sale of its property, and thereafter plaintiff sued to restrain sale of corporation property, and restraining order only delayed sale, if defendant elected to stand on agreement after plaintiff's breach of contract by suing for an injunction ceased to exist, he could not thereafter change his position to plaintiff's damage by asserting that contract was abandoned.

4. Where plaintiff alleged that defendant breached his contract to collect judgment in his favor out of net earnings of corporation or out of proceeds of sale of its property, finding that defendant

was justified in ignoring contract and suing out execution against plaintiff's corporation stock was error, where such conclusion could not properly be drawn from facts and was not within issues.

5. Where defendant agreed that he would collect consent judgment in his favor only out of net earnings of corporation or out of proceeds of sale of its property, and where he did not abandon agreement because plaintiff sued to restrain defendant and corporation from selling property, plaintiff was entitled to damages sustained by sale of his stock in corporation to satisfy judgment.

6. Where defendant agreed to collect judgment against plaintiff only out of net earnings of corporation or out of proceeds of sale of its property, even though defendant waived plaintiff's breach of contract in restraining corporation's sale of its property, in so far as it afforded defendant right to abandon or terminate agreement, he could recover damages sustained on account of plaintiff's breach.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for breach of contract. Judgment for respondent. *Reversed and remanded.*

Van de Steeg & Breshears, for Appellant.

F. A. Hagelin and D. L. Rhodes, for Respondent.

Counsel cite no authorities on points decided.

WM. E. LEE, C. J.—The issued capital stock of the Nampa Iron Works, Limited, a domestic corporation, was owned by Peters, Russell and one Brace. Peters and Russell each owned 750 shares and Brace owned 1 share. In 1913, both Peters and Russell had actions pending against the corporation, and Russell had commenced an action against Peters on a promissory note. These various con-

Publisher's Note.

See Contracts, 13 C. J., sec. 690, p. 625, n. 16; sec. 691, p. 626, n. 19; sec. 766, p. 672, n. 5; sec. 878, p. 738, n. 5.

Corporations, 14 C. J., sec. 1320, p. 864, n. 17.

Trial, 38 Cyc., p. 1979, n. 50.

troversies were settled by an agreement, the material parts of which are as follows:

"That the said parties hereto mutually promise and agree that they will dismiss their suits against the Nampa Iron Works, Limited, now pending in the District Court of Canyon County, Idaho; that the action of C. S. Russell against Charles A. Peters, for amount due C. S. Russell, shall pass to judgment for the amount therein claimed, but that the amount of said judgment shall be collected only out of the net earnings of the said Company or out of the proceeds of the sale of said property, the same to be taken out of the share to which the said Charles A. Peters would be entitled. . . . .

"That in the event of the sale of said business or of the said Company's property the said C. S. Russell shall give notice to the said Charles A. Peters prior to the sale, and the said Peters shall have the privilege of producing a purchaser who will be ready and willing to pay the same or a larger price for said property; that in the event of a sale of said property then the expenses of the sale shall be first paid and all indebtedness standing against the Company shall next be paid; the remainder shall be divided equally between the said parties hereto; provided, however, that in the event the judgment above mentioned shall not have been satisfied, then, and in that event, the said judgment shall be satisfied out of the share belonging to the said Charles A. Peters."

Pursuant to their agreement, the actions against the Nampa Iron Works were dismissed, Peters allowed Russell to obtain a judgment against him for the amount represented by the promissory note, and, as provided in the agreement, Russell assumed the entire management of the business of the corporation and received compensation therefor. Nearly two years thereafter, the business not having been profitable and the judgment not having been paid, the property of the corporation was, by resolution, ordered sold at private sale, and a notice to that effect was published in the press. Prior to the date fixed for the

sale, Peters commenced an action against the corporation, Russell and the remaining stockholder, and obtained an order temporarily restraining them from selling the property. More than a year later the restraining order was set aside and some six months thereafter Russell caused Peters' stock in the corporation to be sold under execution for the satisfaction of the judgment.

This action was instituted by Peters to recover damages sustained by him on account of the execution sale of his stock in the corporation, alleging that the sale constituted a breach of the contract. From a judgment in favor of Russell, this appeal is taken.

It is conceded that Russell satisfied his judgment by the sale of Peters' stock at execution, while the agreement provided that " .... the amount of said judgment shall be collected *only* out of the net earnings of the said company or out of the proceeds of the sale of said property. . . . . " To avoid liability therefor, Russell, in his brief, takes the position that the issuance of the restraining order relieved him from the necessity of further performing the agreement. On the other hand, Peters contends that the restraining order did not constitute such a breach as to justify the sale of his stock, but that, if the restraining order was such a breach as to have justified the abandonment of the agreement, it was not in fact abandoned by Russell.

[1-3] In no event did Peters obligate himself to sell the property of the corporation. That was not within his power, and could only be done by the corporation. (*Humphreys v. McKissock*, 140 U. S. 304, 312, 11 Sup. Ct. 779, 35 L. ed. 473; *Sellers v. Greer*, 172 Ill. 549, 555, 50 N. E. 246, 40 L. R. A. 589.) The most that can be said of the effect of the restraining order is that it delayed, but did not prevent a sale, for the corporation actually made a sale some six months after the dissolution of the restraining order and very soon after Peters' stock was sold at execution. Even though the issuance of the restraining order be deemed a breach on the part of Peters, the facts do not disclose any intention on his part to thereby repudiate the agreement.

(*Blake v. Osmundson,* 178 Iowa, 121, 159 N. W. 766, 773.)
It had been performed on his part, and he had everything
to gain by keeping it in force. If the breach afforded
Russell the right to abandon the agreement, these facts
should have been pleaded. (*Mark* v. *Stuart-Howland Co.,*
226 Mass. 35, 2 A. L. R. 678, 115 N. E. 42.) Nowhere in
his answer, consisting of a specific denial of the complaint,
four affirmative defenses and a counterclaim, does he allege
that he abandoned or terminated the contract. On the con-
trary, in his first affirmative defense and in his counter-
claim for damages occasioned by the issuance of the re-
straining order, Russell expressly alleged that he at all
times faithfully performed all the covenants and agreements
on his part to be performed, and the court found he had
complied with the agreement subsequent to the dissolution
of the restraining order. If the contract was kept alive by
Russell, despite Peters' breach, it was kept alive for all
purposes, and for the benefit of both parties.

"Leake, on Contracts (4th Ed.) 618, says that the 're-
nunciation of a contract will operate as a present breach
only, if accepted and acted upon as such by the other party,
who may, if he pleases, disregard it and insist upon per-
formance according to its terms. The promisee may treat
the notice of intention as inoperative and await the time
when the contract is to be executed, and then hold the other
party responsible for all the consequences of nonperform-
ance. But in that case he keeps the contract alive for the
benefit of the other party, as well as his own; he remains
subject to all his own obligations and liabilities under it,
and enables the other party, not only to complete the con-
tract, if so advised, notwithstanding his previous repudia-
tion of it, but also to take advantage of any supervening
circumstances which would justify him in declining to com-
plete it.' " (*J. K. Armsby Co. v. Grays Harbor Commer-
cial Co.,* 62 Or. 173, 123 Pac. 32.)

[4] Standing on the agreement after Peters' breach
ceased to exist and no longer prevented him from comply-
ing fully with the agreement, Russell could not thereafter

change his position to Peters' damage. (13 C. J. 626, sec. 691; *Fore River etc. Co. v. Southern Pac. Co.,* 219 Fed. 386; *Bradley v. Tolson,* 117 Va. 467, 85 S. E. 466; *Wilson v. Hundley,* 96 Va. 96, 70 Am. St. 837, 30 S. E. 492; *Hayward v. Wemple,* 152 App. Div. 195, 136 N. Y. Supp. 625; *Washburn v. Ranier,* 149 App. Div. 800, 134 N. Y. Supp. 301; *Coffman v. Viquesney,* 76 W. Va. 84, 84 S. E. 1069; *Brown v. California & Western Land Co.,* 145 Minn. 432, 177 N. W. 774.) On these issues the court found that " . . . . plaintiff wholly disregarding his covenants and agreements in said contract contained, caused a writ to issue . . . . restraining and forbidding the sale aforesaid . . . . " and concluded as a matter of law that "the plaintiff having repudiated said contract and refused to abide by its terms and conditions, the defendant was justified in treating the contract as breached and was justified in ignoring the said contract and suing out an execution against any available property owned by the plaintiff."

The evidence is sufficient to sustain the finding that Peters, by causing the restraining order to issue, breached the agreement. In view of the fact, however, that Russell failed to plead, and the court to find, that Russell abandoned or "ignored" the agreement, it is undeniable that the court erred in concluding as a matter of law that he was justified in "ignoring the said contract and suing out an execution. . . . . " That conclusion could not properly be drawn from the facts and was not within the issues.

[5, 6] The agreement not having been abandoned because of the issuance of the restraining order, Peters was entitled to recover the damages he sustained by reason of the sale of his stock, in violation of the express terms of the agreement, and Russell, even though he waived the breach, in so far as it afforded a right to abandon or terminate the agreement, may recover the damages sustained by him on account of the breach created by the issuance of the restraining order. (*Clark v. West,* 193 N. Y. 349, 86 N. E. 1; *Frankfurt-Barnett Co. v. Prym Co.,* 237 Fed. 21, L. R. A.

Points Decided.

1918A, 602.)  See, also, *Kauffman v. Raeder*, 108 Fed. 171,
47 C. C. A. 278, 54 L. R. A. 247.

When this cause was argued, the court was advised of
Russell's-death, and his administrator, J. F. Bow, was there-
upon substituted.

Reversed and remanded.  Costs to appellant.

Budge, Givens, Taylor and T. Bailey Lee, JJ., concur.