826 P.2d 1288

Gwinn F. RICE and Lena Rice, husband and wife, Plaintiffs-Appellants,

v.

HILL CITY STOCK YARDS COMPANY, a defunct Idaho corporation; the unknown heirs and devisees of R.H. Bennett, Joe Urquidi, P.M. Gandiago, Joe Darrianaga and James Farmer, said named individuals being the last directors of Hill City Stock Yards Company and all of said individuals being deceased; E.R. Hanford, if living; the unknown heirs and devisees of E.R. Hanford, if deceased; A.C. Chipman and Rosa B. Chipman, if living; the unknown heirs and devisees of A.C. Chipman and Rosa B. Chipman, if deceased; Camas Prairie Development Company, a defunct Idaho corporation; the unknown last directors, if living, and if deceased, the unknown heirs and devisees of said last directors of Camas Prairie Development Company, a defunct Idaho corporation; County of Camas, State of Idaho, a body politic corporate; all of the unknown owners and claimants of the following described real property situate in Camas County, State of Idaho, to wit: [1] Defendants,

and

Faulkner Land and Livestock, Inc.; Charles J. Olson; Robert F. Bennett; Hammet Livestock Company, a corporation; Dennis Strom; and Adeline M. Urquidi, Defendants-Respondents.

No. 18949.

Supreme Court of Idaho,
Twin Falls, March 1991 Term.

Feb. 3, 1992.

Rehearing Denied March 27, 1992.

---

**1.** The lengthy legal description contained in the Notice of Appeal has been omitted from this title since it is not relevant to the disposition of this appeal.

Ling, Nielsen & Robinson, Rupert, for plaintiffs-appellants. Roger D. Ling, argued.

Rosholt, Robertson & Tucker, Twin Falls, for defendants-respondents. Gary D. Slette, argued.

## ON DENIAL OF PETITION FOR REHEARING

BAKES, Chief Justice.

Plaintiffs Gwinn and Lena Rice brought this action against defendants Hill City Stock Yards, Faulkner Land & Livestock, Inc., and others, seeking to quiet title in certain real property in Camas County, Idaho. The trial court denied plaintiffs' claim to the property. Plaintiffs appealed this decision, and the Court of Appeals reversed and remanded the case for entry of judgment in favor of plaintiffs. Upon denial of defendants' petition for rehearing, the Court of Appeals issued an addendum to its original decision, still holding in favor of plaintiffs. Defendants then filed a petition for review of the Court of Appeals decision, and this Court granted that petition.

The Court of Appeals opinion set forth most of the pertinent facts:

The real property was originally purchased and owned by the Hill City Stock Yards Company, a corporation. The corporation was formed by a group of sheepmen operating in Camas County. The real property was used by those shareholders, a day or two each year, as a staging area to prepare livestock for shipment by rail. During the 1950's, shipping by rail was discouraged and the

stockmen began shipping by truck. Consequently, the real property ceased to be used to prepare livestock for shipment on the railroad. It remained in use only as an occasional stop-over point for livestock operators trailing either sheep or cattle to or from the summer range.

The record title to the real property was vested in Hill City Stock Yards Company, which had been incorporated in Idaho on August 30, 1938. In its 1938 annual statement, the corporation listed R.H. Bennett, Joe Urquidi, P.M. Gandiago, Joe Barinaga (listed as Joe "Darrianaga" in the caption of this case), and James Farmer as directors.... The district court found that these were the last known [directors] when the corporation forfeited its charter on November 30, 1939. I.C. § 30–614 (repealed effective July 1, 1981). The corporation was never reinstated and eventually was dissolved by operation of law on March 1, 1979. I.C. § 30–614.

On February 1, 1967, James Farmer gave his son, J.E. Farmer, a quitclaim deed to the corporation's real property. James Farmer died a few months later. The deed recited that James Farmer acted as the sole surviving trustee of Hill City Stock Yards Company in making the conveyance. J.E. Farmer did not record the deed until 1978, but in 1968 he began paying the taxes assessed against the real property.

Gwinn Rice, a farmer residing at Hill City, used the real property since 1957 with the informal permission of both James and J.E. Farmer. In April, 1981, Rice entered into a formal written lease with J.E. Farmer for a five-year term. After the expiration of the lease, on June 6, 1986, Rice obtained a deed to the real property from J.E. Farmer and his wife. Rice then commenced this quiet title action, claiming title both by virtue of the deed obtained from J.E. Farmer and by adverse possession. After trial, the district court concluded that Rice had no claim to the real property either by deed or by adverse possession. This appeal followed.

In addition to the foregoing facts, the record reflects that Faulkner Land & Livestock (Faulkner) purchased a sheep ranching business from Riley Smith and James and J.E. Farmer in 1945. Faulkner claims that this purchase of James Farmer's sheep ranching business also included James Farmer's interest in the property owned by Hill City Stock Yards, to which Rice is now attempting to quiet title.

The trial court found that Rice had no valid claim to the property because the deed from James Farmer to his son, J.E., was a nullity and also because neither Rice nor the Farmers had met the elements of adverse possession. The trial court also found that Faulkner obtained a beneficial interest in the Hill City Stock Yards Co. when it purchased the sheep ranching business from the Farmers. The Court of Appeals agreed that the deed to Rice was a nullity, but reversed the trial court's conclusion that J.E. Farmer did not adversely possess the property, holding that Rice had adequately shown that J.E. Farmer had fulfilled the requirements of adverse possession. The Court of Appeals also ultimately found that Faulkner's claim to a beneficial interest in the property was invalid as it was based on hearsay testimony.

The first issue on this appeal has two components: Did the trial court correctly conclude that the plaintiffs had no valid claim to the property because, first, the quitclaim deed given to J.E. Farmer by James Farmer was a nullity, and second, there was no substantial and competent evidence to support Rice's claim to the property by adverse possession? Then we are required to determine if the trial court erroneously concluded that Faulkner Land and Livestock has a beneficial interest in the property.

When this Court reviews a decision of the Court of Appeals, we give consideration to the ruling of the Court of Appeals, but make an independent appellate review of the trial court's decision. *Sato v. Schossberger*, 117 Idaho 771, 792 P.2d 336 (1990); *State ex rel. Evans v. Barnett*, 116 Idaho 429, 776 P.2d 438 (1989). The district court, as trier of fact, is in the best

position to judge the credibility of evidence. Therefore, if substantial and competent, though conflicting evidence supports the trial court's findings of fact, we will uphold those findings on appeal. I.R.C.P. 52(a); *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985); *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982).

■ We first consider the trial court's conclusion that J.E. Farmer did not receive a valid deed to the property from his father. The Court of Appeals explained its decision to uphold the trial court's holding as follows:

> The trial court found that the deed from James Farmer to J.E. Farmer was a nullity and conveyed no interest in the real property. We agree. The deed recited that J.E. Farmer, as grantor, was acting as the "sole surviving trustee of Hill City Stock Yards Company." The trial court found that J.E. Farmer was not, in fact, the sole surviving trustee of Hill City Stock Yards Company. Moreover, the law requires that those serving as statutory trustees, in winding up the affairs of a forfeited corporation, must act in concert, not unilaterally. *Smith v. Steele Motor Company*, 53 Idaho 238, 22 P.2d 1070 (1933). Thus, the deed from James Farmer to J.E. Farmer was defective and it did not pass title.

The Court of Appeals correctly affirmed the trial court on this issue. There is evidence in the record to support the trial court's finding that Joe Barinaga, an original director of Hill City Stock Yards, who also became a trustee when the corporation forfeited its charter in 1939, was still alive when James Farmer deeded the property to J.E. Farmer in 1967. Since Joe Barinaga did not participate in the transfer of the property to J.E. Farmer, the deed conveying the property was a nullity, and the trial court did not err in so holding. *See Smith v. Steele Motor Co.*, 53 Idaho 238, 22 P.2d 1070 (1933).

We next consider the trial court's finding that Rice failed to prove by clear and satisfactory evidence that J.E. Farmer had adversely possessed the property against all others from and after 1967, when Farmer received the deed from his father. Rice received his quitclaim deed from J.E. Farmer for the property on June 6, 1986, and filed this action on August 20, 1986, barely two months later. Thus, Rice must rely upon the claimed adverse possession of the Farmers in order to establish the five years of adverse possession required by statute.

The trial court made the specific finding of fact that "[n]either the Plaintiffs nor their predecessors-in-interest have ever maintained an open, notorious, exclusive and hostile possession of the Property." Based on this finding, the court then made the legal conclusion that "[p]laintiffs have not demonstrated by clear and satisfactory evidence that title to the Property should be quieted in them. The Plaintiffs have failed to meet the burden of proof required for a showing of a claim of adverse possession."

The Court of Appeals reversed the trial court, holding that the uncontroverted evidence demonstrated that J.E. Farmer did fulfill the elements of adverse possession with regard to the northern fenced portion. Thus, the Court of Appeals held, under I.C. § 5–208, "the adverse possession of the fenced parcel would extend to the balance of the real property under I.C. § 5–208(4)." However, from our review of the record, and giving appropriate deference to the trial court's opportunity to view the witnesses as they testified, particularly regarding the witnesses pointing to locations on maps and other exhibits, we conclude that there is substantial evidence to support the trial court's finding that neither the Farmers nor Rice maintained the "open, notorious, exclusive, and hostile possession of the property" necessary to establish adverse possession by clear and satisfactory evidence.

■ A party claiming title to property by adverse possession has the burden of proving all the elements by clear and satisfactory evidence. *Berg v. Fairman*, 107 Idaho 441, 690 P.2d 896 (1984); *Pincock v. Pocatello Gold & Copper Min. Co.*, 100 Idaho 325, 597 P.2d 211 (1979); *Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974). In this case, Rice claimed ownership of the

property by adverse possession under color of title. I.C. § 5–208, which covers claims to property under color of title, reads:

**5–208. Claim under written instrument—Possession defined.—** For the purpose of constituting an adverse possession by a person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

1. Where it has been usually cultivated or improved.

2. Where it has been protected by a substantial inclosure.

3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant.

4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.

I.C. § 5–207 provides that a party must possess property under color of title for five years to claim title by adverse possession.

■ This Court has frequently held that in order to claim title to land by adverse possession, the possession must have been actual, open, visible, notorious, continuous, exclusive and hostile to the true owner's title and to the world at large for the whole period prescribed by the statute. *Gameson v. Remer*, 96 Idaho 789, 537 P.2d 631 (1975); *Smith v. Smith*, 95 Idaho 477, 511

P.2d 294 (1973); *Hawe v. Hawe*, 89 Idaho 367, 406 P.2d 106 (1965). Furthermore, in *Pincock v. Pocatello Gold & Copper Min. Co.*, 100 Idaho 325, 331, 597 P.2d 211 (1979), this Court set forth the requirements necessary to establish a claim of adverse possession under color of title:

(1) that they entered into possession, as that term is defined by I.C. § 5–208, of the disputed property; (2) under a claim of title, which claim in this case is founded upon a decree of a competent court; (3) exclusive of other right; (4) that there has been a continued occupation and possession of the disputed property described in the decree of distribution; (5) that they have so held the property for five years; and (6) that they have paid all taxes, state, county or municipal, which have been levied and assessed upon such land according to law.[2]

■ If we treat the entire acreage as one parcel of property, there is no question that neither J.E. Farmer nor Rice ever used the entire parcel openly, notoriously, and exclusive of others, since the record indicates that many people used the southern parcel of the property continuously and without permission.

The evidence regarding the northern parcel of the property is less conclusive. Much of the testimony supports Rice's claim that J.E. Farmer fulfilled the required elements of adverse possession against the northern parcel. Rice testified that he (Rice) used the northern portion of the property from 1957 on with the permission of James and J.E. Farmer and that he (Rice) improved the property by putting up fencing and building winter headquarters, corrals, hay sheds, and a spring house. Furthermore, he testified that:

**2.** Neither I.C. §§ 5–207 or 5–208, which are at issue in this case, state that payment of taxes is required to gain title to property by adverse possession. However, in a footnote, the *Pincock* court pointed out that I.C. § 5–210, which covers adverse possession under an oral claim, states that adverse possession shall not be established "under the provisions of any sections of this code" unless taxes are paid. I.C. §§ 5–207 and 5–208 were adopted as part of the same code as I.C. § 5–210 in 1881, and thus the requirement that taxes be paid to make a valid

claim of adverse possession also applies to I.C. §§ 5–207 and 5–208. One case, *Stout v. Westover*, 106 Idaho 533, 681 P.2d 1008 (1984), stated that "payment of taxes is not a requirement under either I.C. § 5–207 or § 5–208." However, in *Stout*, the trial court found and this court affirmed that the person claiming title by adverse possession had paid taxes on the property in question. Thus, the statement that taxes are not a requirement under §§ 5–207 and 5–208 was merely dicta in that case.

Q. Did anyone hold themselves out as being the owner of the property to you?

A. Nobody held themselves out as being the owner of the property except Jay Farmer.

Q. Jay Farmer did, then?

A. It was with his permission that I done all these things.

Q. When you say Jay Farmer, was that the son or the father?

A. That's the son [J.E. Farmer], at this time.

Furthermore, at one point in his testimony, John Faulkner testified that he primarily used the area south of the highway. He also testified that he knew the Hill City Stock Yards Company owned land on the northern side of the road, but he didn't exactly know where it was and didn't know if the property north of the highway was entirely fenced because he had "never been on the back side to see." The record also indicates that J.E. Farmer began paying all taxes on the property in 1968 when he received the quitclaim deed from his father, but the taxes were assessed in the name of Hill City Stockyards until 1983.

On the other hand, some of the testimony indicates that Faulkner and others also used the northern parcel without permission, which would defeat Rice's claim. When asked if he had seen Faulkner's men or sheep on that property, Rice responded, "Well, it's a cinch they've been on there." He also stated that two other ranchers in the area, Dennis Strom and Charles Olson, had used both the northern and southern parcels and answered another question by stating, "I told in my testimony that people used it [the property] without my permission." Charles Olson, who ran cattle in the area until 1974, confirmed in his testimony that he and his family had used the property on the north side of the highway.

John Faulkner also testified that he and his family repeatedly used the property.

Q. Are you familiar with the property described in the Complaint and referred to today as the disputed property?

A. Yes.

Q. How did you become familiar with it?

A. With use.

Q. How long has the Faulkner family used that property?

A. I'm aware of since 1942. Continuously.

Q. And is that on an annual basis?

A. Yes.

Q. How many times a year?

A. One, two, five. Depends which year and where we're going.

 *　　*　　*　　*　　*　　*

Q. Did you continue to use that property, then, from 1957, on?

A. Yes.

Q. Until the present date?

A. Yes.

 *　　*　　*　　*　　*　　*

Q. Does it continue to be a necessary part of your operation?

A. Yes.

When asked if he used the property with permission, he answered, "Not by permission of anybody, just used it." Finally, Faulkner testified that he was never aware that J.E. Farmer held himself out to be the owner of the property:

Q. Did the Farmers know that Faulkner Land & Livestock, Faulkner Land & Livestock and Faulkners, used the property?

A. Yes.

Q. Did either of them say to you that you could not use the property?

A. No.

Q. Did either of them ever say to you that you had to pay to use the property?

A. No.

Q. Did either of them ever say you couldn't go on the property?

A. No.

Q. Did either of them ever try to keep you off the property?

A. No.

From the record it is often unclear whether the witnesses were testifying as to the northern or southern portion of the property. The trial court was in the best position to weigh and evaluate the testimony of the witnesses, particularly as that

testimony relates to pointing out locations on maps and other exhibits. Given the heightened burden of proof, *i.e.*, clear and satisfactory evidence, which the plaintiffs were required to meet, we cannot conclude that the trial court's finding of fact that "neither the Plaintiffs nor their predecessors-in-interest have ever maintained an open, notorious, exclusive and hostile possession of the Property," is clearly erroneous. I.R.C.P. 52(a), *MacNeil, Rueth, supra*.

In addition to alleging that the trial court erred in finding no adverse possession, appellant Rice argues that the trial court erred in finding that Faulkner Land and Livestock obtained an interest in the Hill City Stock Yards Company when it purchased the sheep ranching business from Riley Smith and James Farmer. However, a party seeking to quiet title to real property must rely on the strength of his own title and not on the weakness of that of his adversary. *Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981); *Pincock v. Pocatello Gold and Copper Min. Co., Inc.*, 100 Idaho 325, 597 P.2d 211 (1979); *Nelson v. Enders*, 82 Idaho 285, 353 P.2d 401 (1960). Rice may not rely on the alleged weakness of Faulkner's claim to the property to support his own quiet title action. Because Rice did not convince the trial court, by a showing of clear and convincing evidence, that he or his predecessors-in-interest had fulfilled the elements of adverse possession, his quiet title action fails. We have previously concluded that the trial court's finding was not "clearly erroneous." I.R.C.P. 52(a).

Rice, however, argues that the answering defendants had no standing to attack the validity of his claim to the property since, as he asserts, they themselves did not establish a valid claim to the property. Rice also asserts that Faulkner waived any right to claim title to the property and is thus estopped from attacking his claim because they did not attempt to determine who owned the property, did not pay any

taxes on the property, and did not object when James Farmer attempted to deed the property to J.E. Farmer. Finally, Rice argues that I.C. § 30–1–105, which provides that any action brought by or against a dissolved corporation will remain valid for only two years after the date of statutory dissolution, bars the answering defendants from asserting a claim to the property because no such action was brought within two years of the statutory dissolution.

■ As previously stated, a party seeking to quiet title to real property must rely on the strength of his own title and not on an adversary's weakness. *Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981); *Pincock v. Pocatello Gold and Copper Min. Co., Inc.*, 100 Idaho 325, 597 P.2d 211 (1979); *Nelson v. Enders*, 82 Idaho 285, 353 P.2d 401 (1960). In each of the above arguments, Rice attempts to establish that his claim to the property must succeed because the answering defendant's claims are without merit. However, we have affirmed the trial court's finding that Rice failed to establish a valid claim to the property, either by deed or by adverse possession. His arguments that the answering defendants have no standing to attack his claim or are somehow estopped from attacking his claim in no way make his claim to the property any stronger.

As to the waiver and estoppel claims, the trial court specifically found that "[t]here is no estoppel or waiver of rights by the Defendants." This was a question of fact for the trial court which it resolved against appellant Rice. We conclude that the trial court's finding is not clearly erroneous.

■ Rice further argues that I.C. § 30–1–105 bars Faulkner from asserting any claim to the real property after March 1, 1981, two years after the date of the statutory dissolution of the Hill City Stock Yards Company resulting from an application of I.C. § 30–614 (repealed effective July 1, 1981). Again, Rice's claim focuses on the weakness of Faulkner's claim to the real property, rather than the strength of his own claim to title, which the trial court resolved adversely to him. Accordingly,

I.C. § 30–1–105 does not support Rice's claim.[3]

■ Rice also assigns as error the trial court's Conclusion of Law No. 10, that "Title to the Property remains in the name of Hill City Stock Yards Company, or alternatively, its shareholders." The trial court's original judgment, filed on October 19, 1988, incorporated Conclusion of Law No. 10, and "ORDERED, ADJUDGED AND DECREED that title to the property described in Exhibit "A" remains in the name of Hill City Stock Yards Company, or alternatively, its shareholders." The original judgment and the later amended judgment also decreed "that plaintiffs [Rices] have no right, title or interest whatsoever in and to the property," and that "title to the property ... remains in the name of Hill City Stock Yards Company, or alternatively, its shareholders."[4] However, the court, on December 13, 1988, also entered a "Default Judgment (Nunc Pro Tunc)" against Hill City Stock Yards and the other defendants who did not answer or appear at trial.[5] The default judgment stated that "as to said defaulting defendants herein named, the plaintiffs [Rices] are the owners of the hereinafter described real property and are entitled to the possession thereof, and that none of the said defaulting defendants have any lawful estate or interest in or to said property, or any portion thereof...." Clearly, the December 13, 1988, amended judgment and the December 13, 1988, default judgment are in conflict with each other.[6] In the December 13th amended judgment, the trial court concluded that title to the property "remains in the name of Hill City Stock Yards

3. In fact, if I.C. § 30–1–105 is applicable to this quiet title claim, the section would also appear to preclude Rice's action against the Hill City Stock Yards Company, the first named defendant in the action. I.C. § 30–1–105 provides in part: "The dissolution of a corporation ... shall not take away or impair any remedy available *to or against* such corporation ... for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two (2) years after the date of such dissolution."

4. The trial court entered its original judgment on October 19, 1988. On December 13, 1988, the trial court entered an amended judgment which included $268.25 as costs as a matter of right pursuant to I.R.C.P. 54(d)(1)(C), and $346.10 as discretionary costs pursuant to Rule 54(d)(1), for a total award of costs in the amount of $614.35. Other than the insertion of the amount of costs awarded, the original judgment and the amended judgment were essentially identical.

5. The December 13, 1988, "Default Judgment (Nunc Pro Tunc)," was in favor of the Rices, and against all of the defendants who had failed to appear, including the Hill City Stock Yards Company, a defunct Idaho corporation, the unknown heirs and devisees of the last known directors (none of whom appeared except Robert F. Bennett), several other individuals and corporations, and "all of the other unknown owners and claimants who have or may have some claim in the below described real property." The default judgment ordered that "as to said defaulting defendants herein named, the plaintiffs [Rices] are the owners of the hereinafter described real property and are entitled to possession thereof, and that none of said defaulting defendants have any lawful estate or

interest in or to said property, or any portion thereof, and that each and every one of the said defaulting defendants ... are forever barred from asserting or claiming any interest or estate therein adverse to plaintiffs whatsoever, as to said real property described as follows [long description follows]." The default judgment "FURTHER ORDERED that this default judgment be entered as of August 19, 1987, nunc pro tunc," a date approximately sixteen months preceding the date the default judgment was actually signed and filed.

6. The December 13, 1988, default judgment which decrees that "as to said defaulting defendants herein named, the plaintiffs [Rices] are the owners of the hereinafter described real property and are entitled to possession thereof," conflicts with the trial court's earlier decision in its findings of fact and conclusions of law filed October 4, 1988, in which the trial court concluded that, "Plaintiffs [Rices] have not demonstrated by clear and satisfactory evidence that title to the property should be quieted in them." I.R.C.P. 55(b)(2), which sets out the requirements for entry of default judgments, states in part: "If, in order to enable the court to enter [default] judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper." Having conducted a trial, and having made findings holding that the Rices did not "have any lawful estate or interest in or to said property," the entry of the default judgment in favor of the Rices would appear to be contrary to I.R.C.P. 55(b)(2).

Company, or alternatively, its shareholders." In the December 13th default judgment, the trial court concluded that Hill City Stock Yards did not "have any lawful estate or interest in or to said property, or any portion thereof," and that the defaulting defendants, which included the Hill City Stock Yards Company, "are forever barred from asserting or claiming any interest or estate therein adverse to the plaintiffs [Rices] whatsoever as to said real property...." The judgment and amended judgment, which dismiss the Rices' claim and hold that the title to the property remains in the name of the Hill City Stock Yards Company, are in direct conflict with the default judgment which holds that the Hill City Stock Yards Company does not have any lawful interest or estate in the property and is forever barred from asserting or claiming any interest or estate therein adverse to the Rices. Because of the conflict between the judgments, we vacate all the judgments entered and remand this case to the trial court for further proceedings to resolve this conflict.[7]

Rice's final argument is that the trial court erred in failing to make express findings supporting its decision to grant the answering defendants discretionary costs. I.R.C.P. 54(d)(1)(D) specifically requires that the district court "in ruling upon objections to ... discretionary costs ... shall make express findings as to why such specific item of discretionary costs should or should not be allowed." I.R.C.P. 54(d)(1)(D); *Building Concepts Ltd. v. Pickering*, 114 Idaho 640, 759 P.2d 931 (Ct.App.1988) ("The rule requires 'express findings as to why such specific item of discretionary cost should or should not be allowed.' "). By vacating the judgments entered in this case, we also vacate the award of costs, and therefore the question of the allowance of costs must abide the entry of the ultimate final judgment on remand. Nevertheless, to award discretionary costs on remand the trial court must comply with I.R.C.P. 54(d)(1)(D).

We have reviewed the remaining issues raised by Rice and conclude that they are either mooted by our vacating the judgment in this matter, or that they are without merit.

In conclusion, we hold that the trial court's conclusions that, (1) "Plaintiffs have not demonstrated by clear and satisfactory evidence that title to the Property should be quieted in them"; that (2), "The Plaintiffs have failed to meet the burden of proof required for a showing of a claim of adverse possession"; and that (3), "There is no estoppel or waiver of rights by the Defendants," are not clearly erroneous, and we uphold them. However, because the judgment and amended judgment which decreed the title to the property remains in the name of Hill City Stock Yards Company, or alternatively, its shareholders, are in direct conflict with the default judgment entered which decreed that, as to the defendant Hill City Stock Yards Company,

---

7. We further note that the answering defendants did not file a crossclaim or counterclaim to establish title to the property. The sole issue raised by pleadings in this case was whether or not Rice had proved title to the property either by the quitclaim deed he received from Farmer, or by adverse possession. Except for the defendants Faulkner's Land & Livestock, Inc., an Idaho corporation, Charles J. Olson, Robert F. Bennett, Hammet Livestock Company, an Idaho corporation, Dennis Strom, and Adeline M. Urquidi, all of the other defendants, including Hill City Stock Yards Company, failed to appear, and a default judgment was entered against them. That portion of the trial court's decision which concluded that title to the property remained in Hill City Stock Yards, appears to be beyond the scope of the issues raised by the pleadings. Conclusions of law, based upon issues not raised by the pleadings or not tried by the express or implied consent of the parties, cannot support a judgment. I.R.C.P. 15(b); *Peters v. Bow*, 45 Idaho 303, 262 P. 149 (1927); *Carson v. Thews*, 2 Idaho 176, 9 P. 605 (1886). Accordingly, the judgment and amended judgment which decreed that title to the property was deemed to remain in Hill City Stock Yards, may have been entered in error because it went beyond the issues raised by the pleadings. See *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 280, 561 P.2d 1299 (1977) ("Although a corporation which has forfeited its charter cannot have a judgment entered against it or be made a party to an action, *Jolley v. Puregro Co.*, [94 Idaho 702, 496 P.2d 939 (1972)], *supra*, the statutory trustees of such a corporation may properly be sued on any claim against the corporation and judgment may be entered against them in their capacity as trustees.").

the plaintiffs Rices are the owners of the property, the October 17, 1988, judgment, the December 13, 1988, amended judgment, and the December 13, 1988, default judgment must be vacated and the matter remanded for further proceedings to resolve the conflict.

The judgments entered by the district court are vacated and the cause remanded for further proceedings consistent with this opinion. No costs or attorney fees allowed.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.