976 P.2d 922

**Jack R. DeCHAMBEAU and Colleen Mae Kromrei, Plaintiffs–Respondents,**

v.

**The ESTATE OF Vernon K. SMITH, Deceased, and/or his spouse, heirs, devisees, or successors; Victoria H. Smith, an individual, Defendants–Appellants,**

and

**Dolores E. Ashley, Trustee of the Henry R. Dalrymple Testamentary Trust; Martha E. McCarty, and/or her spouse, heirs, devisees, or successors; Norman Gratz and Margaret Gratz, husband and wife, and/or their spouses, heirs, devisees, or successors; and John Does 1–20, Defendants.**

No. 24171

Supreme Court of Idaho,
Boise, January 1999 Term.

March 1, 1999.

Rehearing Denied May 19, 1999.

Vernon K. Smith, Jr., Boise, for appellants.

Elam & Burke, P.A., Boise, for respondents. Jeffery J. Ventrella argued.

KIDWELL, Justice.

Adjacent landowner Victoria Smith, as an individual and as executrix of the Estate of Vernon K. Smith, appeals from the district court's judgment quieting title to river property in the plaintiffs-respondents, Jack DeChambeau and Colleen Kromrei. The district court concluded that the plaintiffs had met all the elements required to establish adverse possession under Sections 5–207 and 5–208 of the Idaho Code. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Jack DeChambeau and his sister Colleen Kromrei (collectively, DeChambeau) own a hundred-acre property on Joplin Road in Ada County (the Joplin Road property), devised to them by their father, John DeChambeau. Adjacent to the Joplin Road property on the east is a parcel (the Smith property) owned by the Estate of Vernon K. Smith and his widow, Victoria Smith (collectively, Smith). Both properties are bordered on the north by land formed by accretion from the Boise River (river property), the ownership of which is at issue in this case.

In 1941, Charles Silliman paid for a survey of the river property. The survey shows a parcel of 57.1 acres "of pasture land as now fenced." Shortly afterwards, Silliman filed a copy of the survey with the Ada County Assessor and acquired a tax number for the river property. The following year, Silliman gave a quitclaim deed to "[f]ifty-seven (57) acres of River land ... known as Tax No. 9" to John DeChambeau in exchange for $200. Approximately the same boundaries and acreage are shown in a 1991 survey of the river property.

DeChambeau leased the Joplin Road property together with the river property at least three times between 1950 and 1979. In 1961 and 1963 DeChambeau leased property to Vernon Smith under written leases. Both leases, drawn up by Smith, described the leased property as containing four parcels, including "Tax 9," and containing "100 acres, more or less, of irrigated farm ground and 57 acres, more or less, of accretion river pasture ground." DeChambeau explicitly assumed responsibility for all taxes and assessments upon the leased property.

John McKinney leased ranching land from DeChambeau from 1972 to 1979 under an oral lease. He testified that the leased property included both the Joplin Road and the river properties because he had walked the boundaries of the leased property with John DeChambeau. McKinney ran his cattle on both the Joplin Road and river properties during the lease period. After McKinney's lease ended, DeChambeau relocated the family cattle business to the Joplin Road property. DeChambeau used the river property for spring and fall pasturage, gravel extraction, and other activities.

In 1994, DeChambeau brought an action to quiet title to the river property on a theory of adverse possession. Smith counterclaimed that she had superior title to that portion of the land lying between the Smith property and the Boise River as accretion land.

Following a bench trial, the district court issued its findings of fact. It found that DeChambeau had continuously exercised control over the entire river property since 1942. Either personally or as lessor, DeChambeau used the river property for pasturage and other farming and ranching activities. He also posted "No Trespassing" signs, directed that dead trees be removed for firewood, and occasionally gave permission for members of the Smith family to camp overnight on the river property. The

district court also found that DeChambeau paid all taxes levied and assessed on the river property from 1942 to the present. Concluding that DeChambeau had met the elements for adverse possession under a written claim of title, the district court entered judgment quieting title in DeChambeau and awarded costs. Smith appeals.

## II.

## STANDARD OF REVIEW

A trial court's findings of fact which are based upon substantial, although conflicting, evidence will not be disturbed on appeal. *Hunter v. Shields,* 131 Idaho 148, 151, 953 P.2d 588, 591 (1998). The findings of fact will not be set aside unless clearly erroneous. *Id.* This Court is free to draw its own conclusions of law from the facts presented. *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997).

## III.

## ANALYSIS

### A. DeChambeau Met the Elements for Adverse Possession Based upon a Written Claim of Title.

"A party claiming title to property by adverse possession has the burden of proving all the elements by clear and satisfactory evidence." *Rice v. Hill City Stock Yards Co.,* 121 Idaho 576, 579, 826 P.2d 1288, 1291 (1992). To gain adverse possession based on a written claim of title, the claimant or predecessors in interest must have continuously occupied and possessed the property for five years. I.C. § 5-207. This Court has set forth six requirements that a party must meet to establish adverse possession based upon a written claim of title:

(1) that they entered into possession, as that term is defined by I.C. § 5-208, of the disputed property; (2) under a claim of title ... (3) exclusive of other right; (4) that there has been a continuous occupation and possession of the disputed property described [in the written instrument]; (5) that they have so held the property for five years; and (6) that they have paid all taxes, state, county or municipal, which

have been levied and assessed upon such land according to law.

*Rice,* 121 Idaho at 580, 826 P.2d at 1292 (quoting *Pincock v. Pocatello Gold and Copper Mining Co.,* 100 Idaho 325, 331, 597 P.2d 211, 217 (1979)). Notwithstanding dicta in *Stout v. Westover,* 106 Idaho 533, 534, 681 P.2d 1008, 1009 (1984), the requirement that taxes be paid applies to *all* cases of adverse possession, including claims under a written instrument. I.C. § 5-210; *Rice,* 121 Idaho at 580, 826 P.2d at 1292; *see also Pincock,* 100 Idaho at 331, 597 P.2d at 217. For claims based on a written instrument, possessing part of the property described in the instrument is sufficient to convey possession of the entire parcel, except when the property is divided into separate lots. I.C. § 5-207.

Smith disputes both the trial court's findings of fact and its conclusion that DeChambeau met the elements necessary to establish adverse possession under a written claim of title. Smith argues that DeChambeau did not possess the land, that a quitclaim deed is inadequate to convey a written claim of title, and that the record does not support a finding that DeChambeau paid all taxes levied and assessed.

Possession for adverse possession under a written claim of title may be shown in several ways. Among these are protecting the property by a substantial enclosure; using it for fuel supply, fencing timber, or pasturage; or using it "for the ordinary use of the occupant." I.C. § 5-208.

Smith testified that the Smith family fenced the accretion ground north of the Smith property in 1960, before leasing land from DeChambeau. Thus, she argues, DeChambeau could not have possessed the accretion ground north of the Smith property as part of the river property. However, Jack DeChambeau testified that his family exercised uninterrupted control of the river property since 1942 when his father received a quitclaim deed to the river property. DeChambeau used the river property for pasturage in the 1980s, as did his lessee, McKinney, in the 1970s. He directed that dead trees be removed from the river property

and, on two occasions, gave permission to members of the Smith family to camp there.

■ Significantly, DeChambeau's possession is shown by leases over three decades which expressly allowed the lessees to use the river property. DeChambeau testified that his family leased both the Joplin Road and river properties to the Dalrymple family in the 1950s. Although Smith contends that the leases to the Smiths in the 1960s did not include accretion land north of the Smith property, the written lease agreements specified that the lease covered not only the "irrigated farm ground" of the Joplin Road property but also 57 acres of "accretion river pasture ground." McKinney, who leased from DeChambeau in the 1970s, testified that he walked the boundaries of the leased land, which included accretion ground directly north of the Smith property. This evidence was sufficient for the trial court to find that DeChambeau "has continuously exercised control over [the river property] in its entirety since 1942." This finding supports the conclusion that DeChambeau entered into possession of the property as defined by I.C. § 5–208. *See Stout,* 106 Idaho at 534, 681 P.2d at 1009.

■ Smith also argues that a quitclaim deed is not sufficient to convey a written claim of title. We disagree.

> The courts have concurred, it is believed, without an exception, in defining "color of title" to be that which in appearance is title, but which in reality is no title.... A claim to property, under a conveyance however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass a title to the subject thereof, yet a claim asserted under the provisions of such a deed is strictly a claim under color of title.

*Crandall v. Goss,* 30 Idaho 661, 673, 167 P. 1025, 1028 (1917) (quoting *Cameron v. United States,* 148 U.S. 301, 307–08, 13 S.Ct. 595, 598–99, 37 L.Ed. 459, 461 (1893)). In *Little v. Crawford,* 13 Idaho 146, 88 P. 974 (1907), this Court specifically held that a claim under a quitclaim deed constituted a claim under color of title. *Id.* at 151, 88 P. at 975. More recently, we evaluated an adverse possession claim for land purportedly conveyed by quitclaim deed under the elements for claims under a written instrument. *See Rice,* 121 Idaho at 578–80, 826 P.2d at 1290–92. We hold that the quitclaim deed from Silliman to John DeChambeau satisfied the requirements for a written claim of title.

■ Tax records introduced into the record by DeChambeau were inconclusive, but Jack DeChambeau testified that his family paid all taxes levied and assessed on the river property since 1942. Smith did not challenge this testimony at trial. Where testimony concerning payment of taxes for adverse possession is uncontradicted, it is sufficient to show compliance with the statutory requirements of I.C. § 5–210 regarding payment of taxes. *See Jones v. State,* 91 Idaho 823, 827, 432 P.2d 420, 424 (1967).

■ The trial court's findings of fact are supported by substantial and competent evidence. Therefore, we hold that DeChambeau met all the elements required for adverse possession under a written claim of title. It is unnecessary to address the parties' arguments concerning adverse possession under an oral claim of right. We affirm the district court's judgment quieting title.

## B. DeChambeau Is Entitled to Attorney Fees on Appeal.

■ Attorney fees may be awarded on appeal pursuant to I.A.R. 41 and I.C. § 12–121 if an appeal was brought without foundation. *Anson v. Les Bois Race Track, Inc.,* 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997). We may grant attorney fees if an appeal "simply invite[s] an appellate court to second-guess the trial court on conflicting evidence." *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990). This requisite threshold is met in this appeal, and we award DeChambeau reasonable attorney fees on appeal.

## IV.

## CONCLUSION

Substantial evidence supports the district court's findings of fact. DeChambeau has

satisfied the legal requirements for adverse possession under a written claim of title. We affirm the judgment awarding quiet title to DeChambeau. Costs and attorney fees on appeal are awarded to DeChambeau.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS, CONCUR.