6 P.3d 397

Jerald KIRKMAN and Diversified Investments Corporation, Selective Investments, Inc., and Select Mortgages, Inc., Plaintiffs–Counterdefendants—Appellants,

v.

Gene and Claire STOKER, husband and wife, Defendants–Counterclaimants—Respondents,

and

Diversified Development Corp., an Idaho corporation, Defendant–Counterclaimant.

No. 24812.

Supreme Court of Idaho.
Boise, February 2000 Term.

July 7, 2000.

Levy Law Offices, Boise, for appellants. Paul E. Levy argued.

Anderson, Kane & Tobiason, Boise; Finch Cosho, P.A., Boise, for respondents. Steven J. Tobiason argued.

KIDWELL, Justice.

Jerald Kirkman appeals from the district court's judgment in favor of the defendants, Claire and Gene Stoker. Kirkman alleged that the Stokers had converted to their own use property that they held in trust (through several corporations) for Kirkman. The district court, after a ten-day court trial, concluded that Kirkman's suit was frivolous.

## I.

### FACTS AND PROCEDURAL HISTORY

#### A.  Facts.

Jerald Kirkman was a real estate developer.  By the late 1980s Kirkman owed over a half million dollars to his creditors, which included the Internal Revenue Service, judgment creditors, and his ex-wife.  In judgment debtor proceedings, Kirkman stated under oath that he had no assets, owned no real property or other property, had no business ventures, and had not transferred any property in the previous five years.  In order to conceal any assets that he did possess from creditors, Kirkman conducted business through Selective Investments, Inc.  Kirkman had the corporation formed on December 19, 1986, by his attorney, Vernon K. Smith, Jr. Rand Scherbel, a business acquaintance of Kirkman's, was the director and incorporator and received 10% of the corporation's profits.  Scherbel understood his role to be the corporation's owner on paper, with Kirkman managing the corporation's daily affairs.  After a year, Scherbel and Kirkman had a falling-out.  Scherbel offered to transfer ownership of the corporation to any person Kirkman chose in exchange for $10,000.

In December 1987 Kirkman married Robin Stoker.  Her parents, Claire and Gene Stoker, owned a successful business in Boise.  In early 1988, Kirkman approached Claire Stoker (Stoker) and asked for her help in his business ventures.  He explained that he had heavy debts and was concerned that the assets of Selective Investments might be taken to pay his personal debts.  Stoker and Kirkman agreed that Stoker would invest in Selective Investments and assume ownership of it.  Kirkman would continue to act as manager of Selective Investments, using it to acquire and develop properties, while Stoker would have authority over the corporation's financial affairs.  Scherbel transferred his interest in Selective Investments to Stoker on February 28, 1988.  Thereafter Stoker was owner and sole shareholder of Selective Investments.

In March 1988, Smith drafted articles of incorporation for Select Mortgages, Inc., a

new corporation which took over many of the assets of Selective Investments. Stoker formed this corporation after Kirkman approached her with his concern that his ex-wife was about to pierce the corporate veil of Selective Investments. Stoker was sole director of Select Mortgages. Over the course of the next several years, Stoker invested heavily in Selective Investments and Select Mortgages, while Kirkman developed properties. The corporations and Stoker individually paid Kirkman's expenses, made his child support payments, satisfied some of his tax liability, provided him with a car, and furnished him with a property in which to live rent-free. During this period, Kirkman answered several writs of execution, attended several judgment debtor examinations, and testified at child support hearings. At each proceeding, he claimed to have no assets.

In 1990, Stoker incorporated Diversified Development, Inc. She was its sole shareholder and sole officer, and filed the corporation's tax returns. Diversified Development entered into two joint venture agreements for projects in the Boise foothills. Kirkman acted as developer for both projects, one of which failed and the other of which ended by mutual agreement of the joint venturers. Tax returns show that Diversified Development paid wages to Kirkman.

After Kirkman and the Stokers' daughter divorced in 1994, the relationship between Stoker and Kirkman soured. The bad blood was exacerbated by heavy losses suffered by Selective Investments, Select Mortgages, and Diversified Development. In 1995 Kirkman formed Riverboat Queen, Inc. and Riverboat Queen II (RBQ II), corporations in which he was the sole director and stockholder. He transferred a property owned by Select Mortgages in McCall, Idaho (the McCall property) to Riverboat Queen without Stoker's knowledge. In August 1996, RBQ II obtained a judgment and order quieting title to the McCall property. Stoker was evidently unaware of the action and was not a party to it. RBQ II later conveyed the property to a third party.

### B. Procedural History.

On May 28, 1996, Kirkman filed suit against the Stokers. He alleged that the Stokers held properties owned by Selective Investments, Select Mortgages, and Diversified Development in trust for Kirkman, but that they had converted the properties to their own use. Kirkman stated causes of action including conversion, fraud, intentional infliction of emotional distress, and breach of fiduciary duty. He requested primarily equitable relief, including a temporary restraining order, a permanent injunction, imposition of a constructive trust, and appointment of a receiver. On May 31, 1996, the district court denied an ex parte temporary restraining order.

Kirkman filed an amended complaint on June 7, 1996. The amended complaint, which requested a jury trial, stated the same causes of action and prayed for the same relief as the original complaint. The Stokers answered and filed a counterclaim alleging that Kirkman had illegally obtained over $10,000 from Claire Stoker and from Diversified Development.

On October 4, 1996, the district court issued a notice of trial setting which set the case for a court trial beginning on June 17, 1997. Discovery was contentious. Kirkman moved numerous times for orders to compel, discovery enforcement, contempt, and sanctions for the Stokers' alleged failure to produce documents. The Stokers also charged that Kirkman was non-responsive to discovery requests. Because of the enormity of discovery, the district court eventually vacated the June trial date.

In April 1997, Kirkman moved for partial summary judgment against the Stokers on the issue of liability. When the Stokers responded, Kirkman moved to strike their affidavits and exhibits. At a June 4, 1997 hearing, the district court denied Kirkman's motions to strike and for summary judgment. It set the trial date for September 1997. In response to a question from the Stokers' new co-counsel, the district court clarified that it anticipated a two- to three-day court trial. Kirkman's counsel expressed surprise that there would not be a jury trial, but raised no objection.

A ten-day court trial was held in September 1997. The district court issued its Findings of Fact and Conclusions of Law on April 7, 1998. It concluded that Kirkman had not established any viable basis for relief under any theory of law or equity. It chided Kirkman:

> To bring a case based upon the central assertion that one has committed perjury in multiple court proceedings throughout the years but should now be believed to have been defrauded by the scheme devised to cheat creditors, defies belief. The most applicable authority is ... sometimes referred to as *The Highwayman's Case.*

The court attached a synopsis of the Highwayman's Case [concerning a highwayman suing his partner in crime] to its findings.

The district court issued judgment for the Stokers on June 1, 1998. Kirkman then moved for judgment against the Stokers on their counterclaim. He called for a hearing on the motion on June 17, but then failed to appear at the hearing, and the counterclaim was dismissed. The district court, finding that Kirkman brought the suit frivolously, unreasonably, and without foundation, awarded $6,487.46 in costs of right, $1,014.00 in discretionary costs, and $99,130.40 in attorney fees to the Stokers. Kirkman filed a timely notice of appeal. The Stokers filed a notice of cross-appeal which this Court dismissed as untimely.

## II.

## ANALYSIS

### A. This Court Will Not Address the Issue of Whether the District Court Erred in Conducting a Court Trial.

Kirkman's original and amended complaints requested a jury trial. The district court conducted a court trial. Kirkman asserts that he was entitled to a jury trial.

■ This Court does not consider issues raised for the first time on appeal. *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999). Kirkman, by failing to object to the setting of a court trial, failed to bring the issue before the district court and thus did not properly preserve it for appeal. *See*

*State v. Higgins*, 122 Idaho 590, 599, 836 P.2d 536, 545 (1992); *State v. Sharp*, 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980).

Kirkman did not file an objection when the district court set the case for a court trial. Eight months later, when the district court stated that it anticipated a two- to three-day court trial, Kirkman's counsel expressed surprise by stating, "What do you mean court, not a jury?" The district court replied, "Court. It's been set for a court trial for a considerable period of time." Kirkman's counsel did not respond to this statement or indicate any objection to the decision. No objection was raised, either orally or in writing, at any time up to and including the first day of the court trial.

■ At oral argument, Kirkman asserted that his filing of an application for an extraordinary writ with this Court preserved the issue for appellate review. However, Kirkman concedes that the existence of the application was not in the trial court record. The filing of an application for an extraordinary writ with this Court does not relieve a party from the burden of establishing a record before the trial court.

Because Kirkman did not preserve the issue for appeal, this Court will not address the jury trial issue.

### B. The District Court Did Not Apply the Doctrine of Unclean Hands to Bar Relief to Kirkman.

Kirkman asserts that the district court erred in applying the unclean hands doctrine to bar relief.

■ The unclean hands doctrine (also known as the clean hands doctrine) "stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." *Gilbert v. Nampa Sch. Dist. No. 131*, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983) (internal quotations omitted). A trial court's application of the doctrine is subject to appellate review for abuse of discretion. *Id.; Dennett v. Kuenzli*,

130 Idaho 21, 27, 936 P.2d 219, 225 (Ct.App. 1997).

We find no application of the unclean hands doctrine in this case. The district court made no finding of unclean hands. It explicitly stated that it did not rely upon the doctrine of the *Highwayman's Case* in reaching its decision. The district court explained that it cited the *Highwayman's Case* "as a summary of the quality of the case" where Kirkman brought a case "based upon the central assertion that [he had] committed perjury in multiple court proceedings throughout the years but should now be believed to have been defrauded by the scheme devised to cheat creditors." At oral argument, Kirkman asserted that unclean hands is implied in the district court's decision, because it is the only doctrine on which it could have denied relief. We disagree. The district court entered judgment for the Stokers because

> [t]he plaintiff had no assets which were converted by Claire Stoker since he had no assets at the time that he began a business relationship with Claire Stoker nor did he acquire any. While he was employed by Claire Stoker and may have performed some valuable services, the agreement was too vague to enforce nor has he established the value of any of his services beyond the stipend which he received, free housing, and the free use of a vehicle, and payment of some of his debts.

Kirkman's argument that the district court misused the unclean hands doctrine to bar relief is unsupported by the record.

**C.  This Court Will Not Address the Issue of Whether the District Court Erred in Refusing to Grant Partial Summary Judgment to Kirkman.**

■ Kirkman asserts that the district court erred in denying partial summary judgment on the issue of the Stokers' liability because the Stokers presented "sham affidavits" in opposition to Kirkman's motion for summary judgment. Kirkman contends that the Stokers' affidavits should have been barred by the doctrines of quasi-estoppel and judicial admissions.

■ An order denying a motion for summary judgment is not reviewable on appeal from a final judgment. *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 376, 973 P.2d 142, 147 (1999). Therefore, this Court will not address the issue.

**D.  The District Court Did Not Invalidate Deeds Held by Third Parties.**

■ The district court found that Kirkman, without authorization from Stoker or Select Mortgages, transferred a property owned by Select Mortgages to a corporation wholly owned by himself in 1995. The corporation, RBQ II, then conveyed a part interest in the property to Kirkman's counsel in this case, Paul Levy. The district court further found that "[t]here was no legal authority for this transfer since Jerald Kirkman was not an officer or director of Select Mortgages, Inc. at the time of the transfer." Regarding these findings, Kirkman asserts that the district court exceeded its jurisdiction by invalidating deeds held by persons who were not parties to this action.

In 1996 RBQ II, without naming the Stokers as parties, brought an action to quiet title to the McCall property and obtained a default judgment quieting title. Kirkman evidently believes that the district court's factual finding, which is supported by substantial and competent evidence, invalidates the quiet title action and/or the validity of a subsequent conveyance to a third party. It does not. The district court did not make any conclusion of law that RBQ II or the third party did not hold legal title to the McCall property.

■ Kirkman also objects to the finding of fact on the basis that, because he did not list the McCall property in his complaint, it was not a proper matter for the district court to consider. The existence and ownership of the McCall property were first brought up by Kirkman on direct examination. Because Kirkman opened the door to this line of inquiry, he cannot complain about the defendants and the district court addressing it.

We find this issue to be without merit.

### E. The District Court Did Not Abuse Its Discretion by Refusing to Sanction the Stokers for Alleged Discovery Violations or by Limiting the Trial Testimony of Kirkman's Expert on Damages.

█ Kirkman moved numerous times for orders to compel, for discovery enforcement, for contempt, and for sanctions because of the Stokers' alleged failure to produce documents. On appeal, he asserts that the district court "aligned itself with wrongdoing" by not enforcing discovery in favor of Kirkman.

█ The imposition of discovery sanctions is within the discretion of the trial court, and an appellate court will not overturn that decision absent a manifest abuse of that discretion. *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996).

The record does not support Kirkman's charge that the Stokers failed to comply with discovery. The district court held several hearings on Kirkman's various motions to compel, for sanctions, and for contempt. At these hearings, Kirkman charged that the Stokers were hiding documents. The responses of the Stokers' counsel indicate a good-faith attempt to comply with Kirkman's broad requests for production of documents. On June 4, 1997, the Stokers' counsel invited Kirkman to examine all the records in her possession; Kirkman did not examine them until mid-July. The documents that Kirkman requested at this examination were delivered by August 6. Despite this cooperation, Kirkman moved again for sanctions. At a hearing on August 13, the Stokers' attorney told the court that, although some minor documents had been found and supplied to Kirkman after the July 18 inspection, that all major discovery was completed. The court imposed an August 20 discovery deadline for experts and documents of each party, explaining that this would allow counsel adequate time to prepare for trial. The Stokers found a few documents during trial and immediately delivered copies to Kirkman.

The district court's actions show no abuse of discretion. The district court ordered documents to be provided by May 9 when the trial was set for June 17. The Stokers' counsel indicated a willingness to supply extant documents, gave reasons why some requested documents had not been produced, and invited Kirkman to review the files. After the trial was moved to September, the Stokers supplied documents to Kirkman before the discovery deadline and provided the court with a list of all the documents supplied. Kirkman did not move to exclude the few documents discovered during trial. In light of the Stokers' cooperation and timeliness in meeting the revised discovery deadline, there was no abuse of discretion in the district court refusing to apply sanctions.

### F. Kirkman's Other Issues Are Without Merit.

Kirkman has raised numerous other objections to the district court's evidentiary rulings, findings of fact, and legal conclusions. After carefully considering all the additional issues, this Court finds them to be without merit.

### G. The Stokers Are Entitled to Attorney Fees on Appeal.

█ The Stokers have requested attorney fees on appeal pursuant to I.C. § 12–121. This Court may award attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12–121 if it finds the appeal was brought without foundation. *DeChambeau v. Estate of Smith*, 132 Idaho 568, 572, 976 P.2d 922, 926 (1999).

Like the underlying case, this appeal was without merit. Kirkman argued numerous issues which he failed to preserve for appeal by proper objection. He argued with findings of fact and invited this Court to substitute its own judgment for that of the trial court. He urged this Court to ignore firmly-established law. Therefore, we award the Stokers attorney fees on appeal.

### III.

### CONCLUSION

Because Kirkman has shown no error in any of the district court's actions, we affirm the judgment of the district court. Costs to

respondents. Attorney fees on appeal are awarded to the respondents.

Chief Justice TROUT, Justices SILAK, WALTERS and SCHROEDER concur.