# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38085-2012

| | | |
|---|---|---|
| ECHO VANDERWAL and JLZ ENTERPRISES, INC., an Ohio Corporation, | ) ) ) | Boise, June 2013 Term |
| Plaintiffs-Respondents, | ) ) | 2013 Opinion No. 72 |
| v. | ) ) | Filed: June 20, 2013 |
| ALBAR, INC., an Idaho Corporation, | ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant, | ) ) | |
| and | ) ) | |
| ELMER B. SUDAU; T. OWEN MULLEN; and MARITA T. STEWART, dba Lake Country Real Estate, | ) ) ) ) | |
| Defendants. | ) ) | |
| ALBAR, INC., an Idaho corporation, | ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| JLZ ENTERPRISES, INC, an Ohio corporation, and JAMES O. STEAMBARGE, a single man, | ) ) ) ) | |
| Defendants-Respondents. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. The Hon. Steven C. Verby, District Judge.

The judgment of the district court is <u>affirmed</u>.

John A. Finney, Finney Finney & Finney, Sandpoint, argued for appellant.

Charles R. Dean, Jr., Dean & Kolts, Coeur d'Alene, argued for respondents.

EISMANN, Justice.

This is an appeal out of Bonner County from the district court's finding, after a court trial, that the seller of real property had breached its contract with the buyer by failing to remediate a gasoline spill on the property within a reasonable time and the court's award of damages to the buyer. The appeal also challenges the district court's denial of the seller's post-judgment motion to reduce the buyer's damages by the amount it received from the Idaho Department of Environmental Quality after the judgment was entered because of the buyer's completion of the remediation. We affirm the judgment of the district court.

## I.
## Factual Background.

Albar, Inc., was the owner of a business known as Dock-N-Shop, which was a convenience store, gas station, and marina located on the Pend Oreille River. On Memorial Day weekend in May 2003, one of the business's three underground storage tanks leaked gasoline into the surrounding soil. The three tanks were insured through the State of Idaho Petroleum Storage Tank Fund (Fund). Albar eventually entered into a consent order dated August 22, 2003, with the Idaho Department of Environmental Quality (DEQ), which required Albar to remediate the Property and any impacted adjacent property until it met cleanup levels established by DEQ. A contractor retained by the Fund began remediation efforts.

In early 2005, Albar listed the property for sale. Albar completed a property disclosure form, which stated: "Memorial Day weekend 2003 a leak in gas tanks discovered, DEQ & State insurance fund notified immediately and tank pulled next day, suspect soil removed and replaced. DEQ continue monitoring." That statement was false.

JLZ Enterprises, Inc., an Ohio corporation, became interested in purchasing the property. A representative of Albar told Echo VanderWal, the president of JLZ Enterprises, that the soils had been remediated and were clear and that the only task left in the remediation was two monitoring sessions, which would be completed by January 2006. The Albar representative knew or should have known that the statement was false. On June 14, 2005, JLZ Enterprises made an offer to purchase the property for $450,000. The offer included several contingencies,

2

including the "EPA giving closure to gasoline spill on site." Albar countered by increasing the purchase price to $539,000 and agreeing to have "all responsibility and liability for recent gasoline spill on property and adjoining property" instead of the provision regarding the EPA. Albar understood the provision to mean that it was required to continue with the remediation until the property was cleared by DEQ. JLZ Enterprises accepted the counteroffer on June 16, 2005, and the transaction closed on September 14, 2005. As payment of part of the purchase price, JLZ Enterprises executed a promissory note to Albar in the sum of $250,000, which was secured by a deed of trust on the property.

The contractor performing the remediation on behalf of Albar installed a series of vapor extraction wells which were designed to remediate the soil, as well as air sparging wells and an air stripping system to attack ground water contamination. However, it did not do any testing to determine the lateral extent of the contamination even though such testing was required by DEQ before it would clear the property.

In August 2006, there was a meeting with DEQ, JLZ Enterprises, and Albar to discuss a more expeditious and accepted way to achieve remediation of the property. During the meeting, DEQ stated that the soil beneath the Dock-N-Shop building had to be tested to see if there was contamination there. In late August 2006, JLZ Enterprises demolished the Dock-N-Shop building. The contractor performing the remediation on behalf of Albar told a representative of JLZ Enterprises that with the building removed, ground water levels would permit testing below where the building had been in mid-October and that any contaminated soil could be excavated and hauled off. However, the contractor did not test the soil then, and it abandoned any thought of excavating and hauling off any contaminated soil because the cost might exceed the limits of Albar's insurance policy and Albar was not willing to expend any money on the remediation.

Tests conducted in December 2006 revealed contamination at various locations in the soil under the site where the building had been. During the next twelve months, the contractor performing the remediation on behalf of Albar did not take action to remediate the soil below the building site.

JLZ Enterprises wanted to remove the other two underground tanks, one of which was located between the tank that leaked and the building site where contamination had been discovered. Albar took the position that removal of the two remaining tanks was not its responsibility. DEQ would not clear the property until the soils under the two remaining tanks

3

had been tested, and by the summer of 2007 the contractor had not tested the soils beneath those tanks.

On July 16, 2007, JLZ Enterprises failed to make the payment due on the promissory note. In August 2007, it obtained approval from DEQ to remove the two tanks, and it did so. Testing revealed contamination under the tank that had been next to the one that leaked. JLZ Enterprises also removed the top fifteen feet of soil from the tank area through the building site and the easterly property line so that the contaminated soil below it could be excavated and hauled away.

By October 2007, the contractor doing the remediation on behalf of Albar had made no further progress in remediating the site. It had not even obtained approval of its amended remediation plan from DEQ. The contractor's proposed course of action was to continue what it had been doing for the past four years.

JLZ Enterprises decided to take over the remediation itself. It applied for and was admitted to DEQ's voluntary remediation program. Under that program, it assumed liability for the cleanup and would receive a covenant not to be sued by DEQ when the remediation was complete. It may also qualify for financial assistance for a portion of the remediation costs.

JLZ Enterprises submitted its remediation plan to DEQ in November 2007, and the plan was accepted the following month. In January 2008, JLZ Enterprises began its remediation of the entire site by removing the topsoil, excavating the contaminated soil, and hauling it away. That work was completed by the end of April 2008, and then the monitoring began. By then, JLZ Enterprises ran out of money, and its contractor left the site. Eventually, DEQ paid for the needed monitoring.

On August 29, 2007, JLZ Enterprises and its president filed an action to recover damages for fraud against the real estate agent, Albar, and its president; to recover damages against Albar and its president for breach of contract; to rescind the contract; and to recover damages for negligence against the real estate agent and the broker. On November 2, 2007, Albar filed an action to judicially foreclose the deed of trust. Both lawsuits were ordered consolidated on November 26, 2008. The parties later stipulated to dismiss the real estate agent and the broker from the lawsuit. In June 2011, JLZ Enterprises and its president stipulated to dismiss all of their claims except the breach of contract and rescission claims against Albar. The remaining parties also stipulated that JLZ Enterprises had failed to make the monthly payments due on the

promissory note commencing on July 16, 2007; that unless JLZ Enterprises is entitled to rescission of the contract or to recover damages for breach of the contract, the sum of $250,000 plus interest was owing on the promissory note; and that unless JLZ Enterprises is entitled to rescission or to recover damages, Albar is entitled to a decree foreclosing the deed of trust and ordering the sale of the property.

The matter was tried to the district court. After hearing the evidence, it determined that rescission of the real estate contract would not be granted, but that Albar had breached the contract. The court found that the provision in Albar's counteroffer that it had "all responsibility and liability for recent gasoline spill on property and adjoining property" was ambiguous and that based upon the evidence presented that provision required Albar to remediate the property of all contaminate resulting from the 2003 petroleum leak until it met the standard set by DEQ for clearance. The court found that because the contract did not specify a time within which the remediation must be completed, Albar was required to do so within a reasonable time. The court further found that because Albar had failed to remediate the contamination within a reasonable time, JLZ Enterprises was legally entitled to take over the remediation in order to mitigate its damages and to secure the bargained for performance. In addition, the court found that the system of remediation employed by the contractor working on behalf of Albar was not appropriate for the site and that the contractor could not have completed the remediation within the foreseeable future. The court found that the system only worked sporadically due to lack of maintenance. Finally, the court found that the damages for breach of contract proved by JLZ Enterprises totaled $228,044.72.

On July 27, 2010, the court entered a judgment foreclosing the deed of trust and ordering the sale of the property to pay the sum of $61,320.41, which was the remaining principal plus interest after deducting the damages awarded to JLZ Enterprises. Albar and its president filed a memorandum of costs seeking an award of court costs and attorney fees. JLZ Enterprises and its president filed a motion to disallow them, and after a hearing the district court granted the motion. Albar timely appealed.

On November 30, 2010, Albar filed a motion for relief from the judgment pursuant to Idaho Rule of Civil Procedure 60(b). It sought to have the damages awarded to JLZ Enterprises reduced by any sums that it received from DEQ. On March 29, 2011, JLZ Enterprises received

$145,021.95 from the DEQ reimbursement program.  After a hearing, the district court denied the motion.

## II.
### Is the District Court's Finding that Albar Breached the Real Estate Contract Supported by Substantial and Competent Evidence?

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Argosy Trust ex rel. Its Trustee v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005) (citation omitted).  Factual findings are not clearly erroneous if they are supported by substantial and competent evidence, which is evidence that a reasonable trier of fact could accept and rely upon in determining that such facts had been proved.  *Elliott v. Verska*, 152 Idaho 280, 285, 271 P.3d 678, 683 (2012).  An appellant must support assignments of error with citations to the parts of the transcript or record relied upon.  I.A.R. 35(a)(6).

In this case, Albar asserts as an issue on appeal that it did not breach its contract with JLZ Enterprises.  Nowhere in its opening brief does it contend that the district court's findings of fact are clearly erroneous or are not supported by substantial and competent evidence.  Those terms do not even appear in Albar's opening brief.  It simply recites what it contends the facts are.

In its opening brief, Albar did not include any citations to the trial testimony.  During oral argument, it contended that because it asserts that the trial court's findings are unsupported by the evidence, it need not cite to any trial testimony, even that which it contends supports its version of the facts.  The district court explained the evidence upon which it based its findings, but Albar does not even address such evidence or argue that it did not support the court's findings.  For example, in its opening brief on appeal Albar asserts, "JLZ did not bargain for, and ALBAR is not liable, for any set period of remediation (whether within a reasonable time or not), nor any specific remediation result."

With respect to the assertion that JLZ Enterprises did not bargain for any specific remediation result, pursuant to Albar's counteroffer the parties' contract included a provision that stated, "Seller has all responsibility and liability for recent gasoline spill on property and adjoining property."  The district court determined that the provision was ambiguous, and on appeal Albar does not challenge that determination.  The court held that under the circumstances shown by the evidence, the provision required that Albar remediate the property to the

6

satisfaction of DEQ. The evidence that the court relied upon in so finding included the testimony of Albar's president. The court found that Albar's president testified that "such a provision required Albar to prosecute the remediation until the property was cleared by IDEQ." Albar does not deny that its president so testified, nor does it contend that a reasonable trier of fact could not have relied upon that testimony. In its conclusions of law, the court found "that Albar was obligated to remediate all affected property until it met the standard imposed or set by IDEQ for clearance." Albar does not address that conclusion of law in its brief.

With respect to the assertion that Albar is not liable "for any set period of remediation (whether within a reasonable time or not)," the district court stated in its conclusions of law: "The contract obviously does not specify a time for performance. Absent the party's agreement, Idaho law imposes an obligation to perform within a reasonable time." As we stated in *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 233 P.3d 1221 (2010), "The well-established law in Idaho is, 'Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance.' " *Id*. at 318, 233 P.3d at 1240 (quoting *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963)). Albar does not acknowledge that well-established law, nor does it cite any authority supporting its assertion that if the contract does not specify a time for performance then there is no time limit, undoubtedly because no such authority exists.

The district court found that sixteen or eighteen months would have been a reasonable time to remediate the property and that Albar breached the contract by failing to remediate the property in a reasonable time. Albar does not address that specific finding in its brief.

Albar contends that the level of remediation required by DEQ was increased due to JLZ Enterprises ceasing the commercial operations in order to prepare the property for residential development. It states in its opening brief, "The evidence shows that only due to JLZ not continuing the commercial operations, did the IDEQ seek discussions to move the goalposts for remediation from commercial to residential standards." The district court rejected that argument, stating, "The Court finds no evidence was admitted to suggest any causal connection between any such request by JLZ and any delay in Albar's performance." Albar does not point to any evidence supporting its contention that JLZ Enterprises caused any delay in the remediation. The court specifically found that the delay in completing the remediation within a reasonable

7

time was caused by the refusal of Albar to initiate a "dig and haul operation"—to excavate and remove the contaminated soil as JLZ Enterprises did when it took over the remediation.

Finally, Albar states that when JLZ Enterprises took over the remediation and entered into an agreement with DEQ, Albar was relieved of any responsibility it had under the consent decree. Assuming that is correct, Albar does not argue or provide any authority that being released from its obligation to DEQ would also release it from its contractual obligation to JLZ Enterprises and its obligation to pay damages for the breach of that contractual obligation. The district court specifically found as a conclusion of law "that JLZ was justified and legally entitled to take over the remediation in an effort to mitigate its damages and secure the bargained for performance."

"This Court will not search the record for error. We do not presume error on appeal; the party alleging error has the burden of showing it in the record." *Miller v. Callear*, 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004) (citation omitted). Because Albar wholly failed to comply with Rule 35(a)(6) by not including citations to the trial testimony when challenging the court's factual findings, in addition to failing to support its assertions with argument and authority, we will not address this issue on appeal.

## III.
### Is the District Court's Award of Damages to JLZ Enterprises Supported by Substantial and Competent Evidence?

Albar states that it is not responsible for damages awarded by the district court for Albar's breach of its contract with JLZ Enterprises. Other than making that assertion, it does not present any argument challenging any specific award of damages, nor does it include any citation to trial testimony in support of its argument. "The argument section of the appellant's brief 'shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.' " *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012) (quoting I.A.R. 35(a)(6)). Because Albar wholly failed to comply with Rule 35(a)(6) with respect to this issue on appeal, we will not consider it.

## IV.
### Did the District Court Err in Not Awarding Albar Court Costs and Attorney Fees?

Albar filed a memorandum of costs in which it requested an award of court costs and attorney fees. JLZ Enterprises filed a motion to disallow those costs. The district court heard argument on the motion and granted it. In its written order, the court stated that it announced its reasoning on the record. Albar had not included as part of the record on appeal a transcript of the hearing in which the district court did so. "There is nothing in the record on appeal showing the information presented to the district court regarding the motion, the arguments made, or the court's reasoning in granting the motion. In the absence of an adequate record, we will not presume error." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, ___, 297 P.3d 232, 241 (2013).

## V.

### Did the District Court Err in Denying Albar's Motion for Relief from the Judgment?

The district court awarded JLZ Enterprises damages for breach of contract in the sum of $228,044.72, which the court offset against the sums owing on the promissory note. After judgment was entered, Albar filed a motion for relief from the judgment pursuant to Rule 60(b) of the Idaho Rules of Civil Procedure. It based the motion upon subsections (2), (5), and (6) of the rule. It sought to reduce JLZ Enterprises's damage award by the $145,021.95, which JLZ Enterprises had received from DEQ after the judgment had been entered. The district court denied the motion.

Subsection (2) provides that the court may relieve a party from a final judgment for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." "A motion for newly discovered evidence will not be granted if the evidence was not in existence at the time of trial. That is, facts which occur subsequent to trial are not considered newly discovered evidence." *In re Jane Doe, I*, 145 Idaho 650, 652, 182 P.3d 707, 709 (2008) (citation omitted). Because the evidence upon which Albar seeks relief was not in existence at the time of trial, the district court did not err in refusing to grant relief under subsection (2).

Subsection (5) states that the court may grant relief from a judgment if "it is no longer equitable that the judgment should have prospective application." "Since damages are only a remedy for past harm, they represent the net present debt between the parties at the time of judgment and cannot be modified under Rule 60(b)(5)." *Meyers v. Hansen*, 148 Idaho 283, 290,

221 P.3d 81, 88 (2009). The district court did not err in refusing to grant relief under subsection (5).

Subsection (6) provides that the court may grant relief from a judgment for "any other reason justifying relief from the operation of the judgment." Relief can be granted under subsection (6) "only on a showing of 'unique and compelling circumstances' justifying relief." *Miller v. Haller*, 129 Idaho 345, 349, 924 P.2d 607, 611 (1996). In its opening brief, Albar did not argue that there were any unique and compelling circumstances to justify relief from the judgment in this case. When asked during oral argument about the failure to do so, Albar stated that "we're primarily relying on the other subsections of 60(b) that we cited in our brief." Albar later stated that it was "hard to find a unique reason" in this type of case. Albar was then asked if it was contending that this was not a unique and compelling circumstance, and it answered, "It's hard to say it's a unique and compelling circumstance."

In its opening brief, Albar's entire argument with respect to subsection (6) was, "Under Rule 60(b) (6) the facts are any other reason justifying relief from the operation of the judgment, as the application of the duty to mitigate damages and the doctrine of avoidable consequences apply to the damages recoverable by JLZ as an offset." This one-line statement in Albar's brief does not comply with Appellate Rule 35(a)(6). *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 349, 986 P.2d 996, 1015 (1999). "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

## VI.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Albar requests an award of attorney fees on appeal pursuant to the note and deed of trust, the real estate contract, and Idaho Code section 12-120 and 12-121. Because Albar is not the prevailing party on appeal, it is not entitled to an award of attorney fees. *Triad Leasing & Financial, Inc. v. Rocky Mountain Rogues, Inc.*, 148 Idaho 503, 515, 224 P.3d 1092, 1104 (2009).

JLZ Enterprises requests an award of attorney fees on appeal pursuant to the real estate contract and to Idaho Code section 12-120(3), which provides that attorney fees shall be awarded to the prevailing party in an action to recover in a commercial transaction. A commercial

transaction is defined as "all transactions except transactions for personal or household purposes." I.C. § 12-120(3). Because this was an action to recover in a commercial transaction, we award JLZ Enterprises reasonable attorney fees on appeal.

## VII.
### Conclusion.

We affirm the judgment of the district court. We award respondent costs and reasonable attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**