# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41305-2013

CABLE ONE, INC.,

    Plaintiff-Appellant,

v.

IDAHO STATE TAX COMMISSION,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, August 2014 Term

2014 Opinion No. 108

Filed: October 29, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.  Hon. James F. Judd, Senior District Judge.

The judgment of the district court is affirmed.

Chérie R. Kiser, Cahill Gordon & Reindel LLP, Washington, D.C., argued for appellant.

Phil N. Skinner, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Ada County from a determination that income earned in Idaho by a multistate corporation was Idaho taxable income.  We affirm the judgment of the district court.

## I.
## Factual Background.

Cable One, Inc., is a Delaware corporation that is headquartered in Phoenix, Arizona.  It provides cable television and internet services in nineteen states, including Idaho.  In 2005, Cable One received business income from four types of activities in Idaho:  cable television services, internet access services, advertising services, and cable modem leasing.  In its Idaho income tax return for that year, it included revenues earned from all of those activities except revenues from providing internet access services to Idaho customers.  It excluded those revenues on the ground that providing such services to customers in Idaho constituted Arizona sales,

although it also excluded such revenues from its 2005 Arizona income tax return on the ground that they came from Idaho sales.

On December 16, 2008, the Idaho Tax Commission issued a notice of deficiency determination asserting a tax and interest deficiency on Cable One for the 2005 tax year. Cable One timely filed a petition for redetermination, which the Tax Commission denied. Cable One then filed a complaint in the district court pursuant to Idaho Code section 63-3049(a). The district court tried the matter de novo, and it ruled in favor of the Tax Commission. Cable One then appealed to this Court.

## II.
## Analysis.

Cable One operates in nineteen states, one of which is Idaho. In 2005, it operated forty-eight cable systems in its nineteen-state area, and each cable system served a distinct geographic area. Six of them were located in Idaho. Cable One's cable systems can carry many different channels, each carrying either video programming or high-speed data. It uses the high-speed data channels to provide internet access services.

The discrete parts of Cable One's broadband cable networks used to provide internet service were described by the district court as follows:

> a) Cable modem – the equipment located within the subscriber's home or office that allows the subscriber to connect to Cable One's broadband cable network and which controls the services available to the subscriber.
> b) Drop – the line from the subscriber's home to the local junction box.
> c) Loop – the section of Cable One's broadband cable network from the local junction box through the "nodes" to Cable One's "head end". Cable One installs and owns the cables and equipment in this part of the broadband cable network.
> d) Nodes – the equipment that changes the signal from or to one transmitted over a fiber optic line to or from one transmitted over a co-axial cable.
> e) Head End – the local cable system's location where the equipment for receiving and transmitting high speed data and the video signals is located. Television and video signals are received by antennas and satellite dishes and are processed for transmission over the broadband cable network. Through the "Combining Network" equipment Cable One combines the high speed data and the video signals for down stream transmission over the "loop" to the customer or separates the high speed data and the video signals received via the "loop" for up stream transmission of the high speed data signal to the internet. The head end equipment includes the System Core Router and the Cisco UBR CMTS which are used primarily to support the internet service and incidentally to support video

2

services. The head end is also the location of the connections provided by Qwest or AT&T for connection to the Internet Backbone.

f) Internet Backbone – Cable One contracts high speed data access to the World Wide Web from Qwest and AT&T. The contracts involve two distinct services: 1) a local service connection which is a fiber optic connection from the head end to the local Qwest or AT&T facility; and 2) a DIA (Dedicated Internet Access) port at the local Qwest or AT&T facility that provides high speed data access to the World Wide Web.

Cable One's headquarters in Phoenix includes what it calls its "Arizona Back Office," which consists of the Solution Center and Network Operations Center personnel, the router, servers, and related equipment and software that support the internet services provided by Cable One through its forty-eight cable systems. The district court summarized the discrete parts of the back office as follows:

a) Internet Backbone – Cable One contracts high speed data access to the World Wide Web from Qwest and AT&T. The contracts involve two distinct services: 1) a local service connection which is a fiber optic connection from the Arizona Back Office to the local Qwest or AT&T facility; and 2) a DIA (Dedicated Internet Access) port at the local Qwest or AT&T facility that provides high speed data access to the World Wide Web.

b) Router – the device that receives and sends high speed data from and to the Internet Backbone and directs (routes) the high speed data to the various components of the Arizona Back Office.

c) Solution Center – a call center that provides support for internet customers throughout Cable One's 48 cable systems.

d) Network Operations Center – a higher level support group for internet customers throughout Cable One's 48 cable systems and monitors the performance of Cable One's internet services over its 48 broadband cable systems.

e) Provisioning Module – server and software that authorizes customers initial setup of their cable modem and internet access.

f) LDAP Module – Lightweight Directing Access Protocol – server and software used to route e-mail and locate equipment on network.

g) SNMP Module – Simple Network Management Protocol – server and software used to manage and configure network.

h) DHCP Module – Dynamic Host Configuration Protocol – server and software used to assign (IP) addresses (i.e. 24.116.1.80).

i) TFTP Module – Trivial File Transfer Protocol – server and software used automated transfer of configure or boot-up files and software between network devices.

j) DNS Module – Domain Name System – server and software used to translate internet and domain names, i.e. Amazon, typed into customer's browsers to the IP address of the Web server hosting those sites.

k) Associate E-mail Module – server and software used to provide Cable One's internal employee e-mail.

l) Billing Module – server and software used for all Cable One billing.

m) DAC (Digital Video) Module – server and software used for digital video services – not used for Cable One internet services.

n) Customer E-mail Module – server and software used for Cable One customer e-mail accounts, i.e. customer@cableone.net.

Cable One could not provide internet access to Idaho customers without the use of the facilities located at its Phoenix headquarters. In addition, the elimination of the local Qwest or AT&T facility and the Idaho DIA (Dedicated Internet Access) ports at the local Qwest or AT&T facility would only terminate internet access to Cable One's Idaho customers. It would not affect internet access or functionality for its non-Idaho customers.

The parties stipulated to the amount of sales revenue received by Cable One in 2005 from customers in Idaho to whom it provided internet access services. The issue is whether any of that income was taxable by Idaho. "Idaho Code § 63-3027 provides a formula for computing Idaho taxable income for a corporation transacting business both within and without this state." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793-94, 134 P.3d 641, 644-45 (2006). The apportionment is based upon three factors: the property factor, the payroll factor, and the sales factor. I.C. § 63-3027(i) (2005). The corporation's business income is apportioned to this state "by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus two (2) times the sales factor, and the denominator of which is four (4)." *Id.*

In this case, the parties did not dispute either the property factor or the payroll factor. Their dispute centers on the calculation of the sales factor, specifically the determination of the numerator of that fraction. "The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." I.C. § 63-3027(p) (2005). Idaho Code section 63-3027(r) defines when sales are in this state. Its applicable subsection provides that the sales are in this state if "[t]he income-producing activity is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance." I.C. § 63-3027(r)(2) (2005).

a. **Identifying the income-producing activity.** The first step is identifying the "income-producing activity" that is at issue. Cable One argues that its income-producing activity

4

is the provision of internet access to all nineteen states in which it operates. However, the Tax Commission adopted a regulation to further define income-producing activity. "The term income producing activity applies to *each separate item of income* and means the transactions and activity directly engaged in by the taxpayer in the regular course of its trade or business for the ultimate purpose of obtaining gains or profit." IDAPA 35.01.01.550.02 (2005) (emphasis added). Pursuant to that rule, the income producing activity is not the activity that produces income from Cable One's nineteen-state system. It is the activity that produces the item of income at issue here, which is the income received from providing internet services to customers located in Idaho.

**b. Determining the state in which the taxpayer's various activities comprising the income-producing activity occurred.** The next step is determining in which state Cable One's various activities occurred that produced the income from the sales of internet services to Idaho customers. Cable One contends that the district court erred by determining the location of Cable One's income-producing activity. It argues that "I.C. § 63-3027(r)(2) does not call for a determination of 'the location of the income-producing activity'" and that "'[c]osts of performance are the geographically identifiable metric for determining the state in which income-producing activities are carried on.'" That argument is incorrect.

Idaho Code section 63-3027 specifies the rules for computing the Idaho taxable income of any multistate or unitary corporation transacting business both within and without this state. Idaho Code section 63-3027(r)(2) states the rule for determining whether sales, other than sales of tangible property, are in this state when "[t]he income-producing activity is performed both in and outside this state." For the income-producing activity to be performed in more than one state, the taxpayer must have activities in more than one state that combine to produce the item of income at issue. In this case, Cable One's activities in both Idaho and Arizona combined to provide Internet services to its customers in Idaho, thereby producing the income from providing that service. Therefore, Cable One's various income-producing activities in each state that combined to produce that income must be identified. The costs of performance of the activities that produce the relevant income are simply the metric for quantifying the income-producing activity in each state.

Prior to trial, the parties filed a document listing various facts to which they stipulated. The stipulated facts included three categories of costs: (a) "Cable One incurred [a specified

5

dollar amount] of costs in Idaho related to Internet access service during 2005"; (b) "Cable One incurred a cost of [a specified sum] in 2005 for backbone services purchased from Qwest and AT&T"; and (c) "The entry for 'Allocated Solution Center Costs' on Cable One's Idaho profit and loss statement included both the costs associated with the Solution Center and with the Network Operations Center. These costs totaled [a specified sum] for 2005."

Based upon those three categories of costs, the district court identified three types of activities that combined to produce the income from providing Internet access to Idaho customers.[1] It found: (a) "Cable One incurred in Idaho employee and local office costs of [a stipulated sum] related to Internet access service during 2005"; (b) "In 2005 Cable One contracted with Qwest and AT&T for them to provide the 'Idaho backbone services' (local service fiber optic connection from the local Idaho head end to the local Qwest or AT&T facility and a DIA port at the local Qwest or AT&T facility) for the connection of the Cable One Idaho's internet customers to the internet"; and (c) "The Arizona Back Office costs allocated to Cable One Idaho internet operations totaled [a stipulated sum] for 2005." The district court determined that Cable One's activities occurring in Idaho were having employees and offices in Idaho and using the backbone provided by Qwest and AT&T to provide Internet services to Idaho customers and that its activities occurring in Arizona were those in the Arizona Back Office.

Cable One raises various arguments contending that the district court erred in concluding that the backbone provided by Qwest and AT&T was an income-producing activity located in Idaho. It argues that it "had only one contract with each of AT&T and Qwest for all the states it operated in, and these contracts were negotiated and managed out of Arizona." Cable One had six systems in Idaho and forty-two systems in the remaining eighteen states in which it operated. Whether it entered into a separate contract with Qwest or AT&T to provide backbone services for each system or one contract to provide backbone services for all systems is irrelevant. That Cable One entered into only one contract with each backbone provider and that the contract was

---

[1] The district court also found that Cable One's direct costs should include the depreciation expense attributable to its high speed data capacity and a percentage of its qualified broadband tax credit. Its ultimate findings for direct costs did not include any depreciation because that sum was not established, but it did include a sum equaling 1.26% of the tax credit. However, the dollar amount of the tax credit determined to be a direct cost was not enough to make any difference in the outcome. Because neither of these findings would affect the outcome, we will not address them.

negotiated and managed in Arizona does not show where the income-producing activity occurred. The contract was not the income-producing activity.

Cable One argues that it "purchased dedicated interstate services from Qwest and AT&T to connect each of its 48 cable systems to each other and to its Arizona headquarters"; that it "used 'the Qwest or AT&T network to facilitate that transmission from the Idaho router to the Cable One Phoenix router'"; and that "[t]he service provided by Qwest and AT&T was a dedicated, point-to-point service between routers." Again, that does not show that it did not use Internet backbone service in Idaho or that the use of such service was not an income-producing activity.

Cable One also argues that it "could not have operated its Idaho cable systems without connecting to its headquarters in Arizona, a connection facilitated by the Internet backbone services." This factual assertion and the various other factual assertions supporting or encompassed within it miss the mark. For Idaho Code section 63-3027(r)(2) to apply, there must be activities by the taxpayer in more than one state that combine to produce the relevant item of income. That presupposes that the activities of the taxpayer in one state could not alone produce that income. The determination of whether the sales occurred in this state is not based upon the importance of the taxpayer's activities in this state versus the importance of the activities in another state. Rather, that determination is based upon the costs of performing those various income-producing activities in each state.

Cable One had six systems in Idaho providing internet service, and each system had a headend located in Idaho. The six systems were named: Twin Falls, Lewiston, Pocatello, Idaho Falls, Boise, and West Valley. The Boise headend was connected to the AT&T Internet backbone, and the remaining headends were connected to the Qwest Internet backbone. AT&T and Qwest each installed its own equipment in the headend to interface with Cable One's router. The Internet backbone was used to transmit the data between Idaho and Cable One's facility in Arizona and to access the internet. Thus, Cable One was using equipment and Internet backbone located in Idaho and owned by AT&T and Qwest in order to provide internet services to Idaho customers. Income producing activity includes "the use of tangible and intangible property by the taxpayer in performing a service." IDAPA 35.01.01.550.02.a. (2005). Therefore, some of the income-producing activity to provide internet services to Idaho customers occurred in Idaho.

7

The district court found that the headend is "the location of the connections provided by Qwest or AT&T for connection to the Internet Backbone." It also found:

> Cable One contracts high speed data access to the World Wide Web from Qwest and AT&T. The contracts involve two distinct services: 1) a local service connection which is a fiber optic connection from the head end to the local Qwest or AT&T facility; and 2) a DIA (Dedicated Internet Access) port at the local Qwest or AT&T facility that provides high speed data access to the World Wide Web.

Cable One does not challenge those findings on appeal. It simply argues that the "[t]he service provided by Qwest and AT&T was a dedicated, point-to-point service between routers," one of which was in Idaho and the other was in Arizona. The fact that the Internet backbone provided by either Qwest or AT&T went from Idaho to Arizona does not support a contention that using the Qwest and AT&T equipment and Internet backbone that were located in Idaho did not constitute income producing activity in this state.

**c. Determining the costs of performing the income-producing activity in each state.** The final step is to determine the costs of performing the income-producing activity in each state. The Tax Commission defines "costs of performance" as "the direct costs determined according to generally accepted accounting principles and accepted conditions or practices of the taxpayer's trade or business." IDAPA 35.01.01.550.03 (2005).

Cable One contends that the district court "failed to distinguish 'direct' costs from common costs." It then states that "direct costs are costs that are incurred solely in order to offer a given service." In making its ruling, the district court considered affidavits submitted prior to trial along with the trial testimony and exhibits. Cable One refers to the affidavit of its Vice President/Treasurer and to a trial exhibit to explain its contentions regarding the costs of performance. In the affidavit, the Vice President/Treasurer stated, "In connection with its cost of performance analysis, Cable One identified its *direct costs* associated with the provision of Internet access service utilizing two different methods." (Emphasis added.) He then lists three categories of direct costs, which are: (a) "costs for employees and local offices located in Idaho"; (b) "Idaho's share of the long distance communications services purchased from third-parties, Qwest and AT&T, by Arizona headquarters for use by all Cable One systems everywhere"; and (c) "Idaho's share of customer support services known as 'Solution Center' and network operation center services known as the 'NOC,' both of which are located in

8

Arizona." Comparing the dollar amounts stated for these three categories and the dollar amounts stated for the three categories of direct costs mentioned above found by the district court, they are the same three categories of costs. Likewise, the trial exhibit identifies these same three categories of costs as being direct costs. Therefore, there was no dispute that these three categories of costs were direct costs.

Cable One sought judicial review of the deficiency determination by filing a civil action against the Tax Commission pursuant to Idaho Code section 63-3049. The district court then tried the matter de novo without a jury. *Gracie, LLC v. Idaho State Tax Comm'n*, 149 Idaho 570, 572, 237 P.3d 1196, 1198 (2010). Cable One had the burden of proving that the Tax Commission's deficiency determination was incorrect. *Albertson's, Inc. v. State, Dept. of Rev., State Tax Comm'n*, 106 Idaho 810, 814, 683 P.2d 846, 850 (1984). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). "Factual findings are not clearly erroneous if they are supported by substantial and competent evidence, which is evidence that a reasonable trier of fact could accept and rely upon in determining that such facts had been proved." *VanderWal v. Albar, Inc.*, 154 Idaho 816, 821, 303 P.3d 175, 180 (2013). "It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses." *Camp*, 137 Idaho at 856, 683 P.2d at 850.

Cable One's Vice President of Engineering testified that "we've identified certain circuits and bills that relate to Idaho that we can identify, you know, based on the contract that we've entered into in order to allocate the costs out." Cable One's Vice President/Treasurer testified that Cable One prepared a 2005 profit and loss statement for Idaho in the ordinary course of its business that included an allocation to Idaho of Cable One's costs of providing internet services to Idaho customers. He also testified that the profit and loss statement was prepared according to generally accepted accounting principles and that it was used for internal budget and accounting purposes. The document shows the amount that Cable One allocated to Idaho for the Internet backbone services that it purchased from AT&T and Qwest. The district court found:

> In 2005 Cable One contracted with Qwest and AT&T for them to provide the "Idaho backbone services" (local service fiber optic connection from the local Idaho head end to the local Qwest or AT&T facility and a DIA port at the local Qwest or AT&T facility) for the connection of the Cable One Idaho's internet customers to the internet. Qwest and AT&T performed their contracts by physically providing and maintaining in Idaho the "Idaho backbone services" for

9

each Idaho Cable One system. Qwest and AT&T billed Cable One for each Idaho specific local service fiber optic connection and DIA port.

The district court found the specific amount that Cable One paid for those services was shown as an entry on the profit and loss statement. It found that sum to be the cost of performing the income-producing activity in Idaho of using AT&T's and Qwest's Internet backbone in Idaho. The parties also stipulated that the cost shown on the profit and loss statement was the cost incurred by Cable One "in 2005 for backbone services purchased from Qwest and AT&T." The district court's finding as to the costs incurred by Cable One for using the Qwest and AT&T Internet backbone in Idaho is supported by substantial and competent evidence.

Based upon the district court's findings as to these three categories of direct costs incurred by Cable One in providing internet service to Idaho customers, 68% of the costs were incurred in performing income-producing activities in Idaho. It therefore found that the sales of internet services to Idaho customers were sales in this state. That finding is supported by substantial and competent evidence.

Based upon its finding that the sales of internet services to Idaho customers were sales in Idaho, the district court calculated the amount of the income taxes and interest owed by Cable One and entered a judgment against it for that amount. Cable One does not challenge those calculations.

### III.
### Conclusion.

We affirm the judgment of the district court, and we award costs on appeal to respondent.

Chief Justice BURDICK, and Justices J. JONES, HORTON and J. Pro Tem WALTERS **CONCUR.**

10