J. JONES, Chief Justice,
concurring in part and in the result.
I concur with the Court’s analysis of the Marina issue in Part E of Section V, but depart from the Court’s analysis in Parts A through D. With respect to Parts A-D, I concur in the result reached by the Court, which, as I understand it, would vacate and remand for an almost complete do-over. While I think the district court tried to do the right thing by quieting title in Blocks A, D, and E in Liberty, subject to Wither-spoon’s first-recorded deed of trust, the route taken by the district court was legally flawed.
In order to understand how this case went off of the legal rails, it is necessary to briefly consider how the case proceeded. Liberty filed the action seeking to quiet title to the Marina. In its first amended answer, Witherspoon raised a number of affirmative defenses, including unclean hands[4] and that Liberty’s claims were “barred” by defects in the foreclosure proceedings. Witherspoon also counterclaimed against Liberty, seeking declaratory relief and claiming entitlement to relief as a third-party beneficiary of the Eighth LMA. In its claim for declaratory relief, Witherspoon alleged that Liberty was estopped from denying the enforceability of the Eighth LMA, that the new deed of trust called for in the Eighth LMA superseded the original deed of trust, that Liberty improperly foreclosed under the original deed of trust, and that Witherspoon had not subordinated its prior deed of trust to the Eighth LMA and the new deed of trust called for therein. When Witherspoon moved for partial summary judgment declaring the Eighth LMA to be binding and enforceable, it reiterated these themes in its legal memorandum. While claiming estoppel, it did not identify a specific estoppel theory, nor did it specifically invoke its unclean hands theory.
The district court apparently chose to invoke judicial estoppel to hold that Liberty could not deny the enforceability of the Eighth LMA. This holding was in error and, as it turns out, superfluous because the district court determined, following trial, that the Eighth LMA was valid and binding between Liberty and The Point. However, premature invocation of judicial estoppel appears to have obscured or obviated the need to address the unclean hands defense and whether Liberty foreclosed against Blocks A, D and E under the wrong deed of trust.
The district court’s invocation of judicial estoppel is perhaps understandable in light of the fact that Liberty had, indeed, signed the Eighth LMA, and had received the executed promissory note and deed of trust for Blocks A, D and E, but nevertheless chose to foreclose under the original deed of trust. However, it would have been better to have denied Witherspoon’s motion for partial summary judgment and let the matter fully play out at trial.
*694 Because the judicial estoppel theory was directed specifically at the question of enforceability of the Eighth LMA and not at the issue of whether it or some other theory prevented Liberty from claiming priority over Witherspoon’s previously-recorded deed of trust, the district court found another reason to grant priority to Witherspoon. That resulted in application of Idaho Code section 45-108, which, as the Court correctly determines, has no application here.
The foregoing recitation is certainly not intended to be a comprehensive analysis, as there are still a number of matters that will need to be addressed by the district court on remand. It is hoped that the following analysis of the issues raised in Parts A-D will be helpful in that respect.
With regard to Section V.A, I agree that the district court incorrectly ruled on summary judgment that Liberty was judicially estopped from denying the enforceability of the Eighth LMA. However, this error is immaterial in light of a subsequent factual determination made by the court in its order denying Liberty’s motion to reconsider following trial. In that order, the district court, considering conflicting trial testimony, determined that the Eighth LMA was the binding agreement between Liberty and The Point. Liberty’s President, while acknowledging having signed the Eighth LMA, denied having received the executed security documents — the new promissory note and new deed of trust pertaining to Blocks A, D and E. On the other hand, Harry Green, President of The Point, testified that he provided the notarized Eighth LMA and ancillary security agreements to Liberty. The district court determined that Mr. Green’s testimony was more credible, that the Eighth LMA was the binding agreement between the parties and, somewhat by inference, that the foreclosure against Blocks A, D and E was improper under the original deed of trust.
Although not mentioned by the district court, the Eighth LMA, itself, sheds light on the issue. Green signed this document in Spokane on September 1, 2011, according to the notary public acknowledging his signature. Green testified that he provided it to Liberty, along with the acknowledged security agreements. Liberty’s president signed the Eighth LMA in Texas on September 8, 2011, according to the notary public acknowledging the same. The agreement specifically says, “[cjontemporaneously with the execution of [the Eighth LMA], [The Point] is executing construction and development loan documents evidenced by a note in the original principal amount of $2,545,843.31 ... secured by, among other things, a deed of trust encumbering [Blocks A, D and E].” Contemporaneous means “occurring ... at the same time.” Black’s Law Dictionary (10th ed.2014). Liberty, having acknowledged that the new note and new deed of trust were signed contemporaneously with the Eighth LMA and presumably available at the time it executed that document, cannot very well claim otherwise.
Whether Liberty is judicially estopped from contesting the enforceability of the Eighth LMA is beside the point. The district court subsequently ruled that the Eighth LMA was the binding agreement between the parties and Liberty did not appeal that determination.
With regard to Section Y.B, I concur with the Court’s conclusions that the Eighth LMA did not, by its terms, release Blocks A, D, and E from Liberty’s original deed of trust and that Idaho Code section 45-108 does not apply to deeds of trust. Therefore, the Court correctly vacated the district court’s holding quieting title to Blocks A, D and E in Liberty subject to Witherspoon’s deed of trust.
I agree with the Court’s finding that the Eighth LMA required Liberty to execute a Partial Release of Lien to release Blocks A, D, and E from Liberty’s original, modified deed of trust and that “Liberty failed to fulfill its obligations in this regard.” It is clear from the record that Liberty received the signed Eighth LMA, along with the new promissory note and new deed of trust, and that Liberty executed the Eighth LMA a week after The Point did so. Upon receipt of these documents, the ball was in Liberty’s court. It was Liberty’s contractual obligation to record the new deed of trust and file the Partial Release of Lien. The Eighth LMA does not specify a date for the per *695 formance of those acts, but in the context of the agreement it appears that it should have been accomplished immediately upon its receipt of the Eighth LMA and related security documents. In any event, Liberty was required to do so within a reasonable period of time. VanderWal v. Albar, Inc., 154 Idaho 816, 822, 303 P.3d 175, 181 (2013). It did not and, indeed, has never done so.
However, just because the new deed of trust and Partial Release of Lien were not recorded does not necessarily mean that Liberty had a legal right to foreclose its original deed of trust, as modified, with respect to Blocks A, D, and E. The Eighth LMA specifically called for a new deed of trust against Blocks A, D, and E and for release of the original deed of trust against that same property. Because the new deed of trust was executed by The Point and delivered to Liberty, it became the operative security instrument between those two parties with respect to Blocks A, D and E. A deed of trust must be recorded to provide notice to other parties, but it is effective between the parties themselves, even if not recorded. If the Eighth LMA and new deed of trust superseded the original deed of trust under which Liberty purportedly foreclosed on Blocks A, D and E, how could it use that deed of trust as the basis for the foreclosure? It would certainly seem that the superseding deed of trust, executed and delivered pursuant to the Eighth LMA, should have been the basis for the foreclosure. As the Court points out, in order to foreclose by advertisement and sale, the trust deed must be “recorded in mortgage records in the county in which the property described in the deed is situated.” I.C. § 45-1505(1). This would obviously mean the current trust deed, rather than a superseded one. That did not occur here, as Witherspoon repeatedly argued to the district court before, during, and after trial.
Nevertheless, the fact remains that the district court erroneously relied upon Idaho Code section 45-108[5] in determining that Witherspoon’s deed of trust had priority over Liberty’s and, therefore, the Court correctly vacated that holding. This critical issue must be determined in further proceedings upon remand.
With regard to Parts C and D of Section Y, there was no adverse ruling by the district court from which an appeal may be taken. Witherspoon certainly raised both issues— that Liberty’s non-judicial foreclosure was void for having been conducted under a superseded deed of trust and that Witherspoon was a third-party beneficiary[6] of the Eighth LMA — but neither issue was addressed by the district court in any of its rulings. It is not for this Court to decide either issue. Rather, those issues must be determined in the first instance by thé district court upon remand.
When the district court takes up this case on remand, it is my view that the issue of who has the priority claim to Blocks A, D, and E should take into account the following salient facts:
1. Witherspoon’s deed of trust on The Point property was recorded on October 4, 2004, prior to any of the Liberty trust deeds. The Witherspoon deed of trust secured the payment of a promissory note in the original sum of $164,171.85, together with “all such further sums as may hereafter be loaned or advanced by [Witherspoon].”
2. On August 26, 2005, Liberty and The Point entered into their original loan *696 agreement. The Point executed a deed of trust securing payment of a note in the amount of $3,934,390. Apparently at Liberty’s request, Wither-spoon entered into an agreement with The Point to subordinate the priority of its deed of trust to Liberty’s deed of trust “and any renewals or extensions thereof.”
3. The Point and Liberty entered into six modifications of the loan agreement and in each instance Liberty required Witherspoon to execute a subordination agreement with The Point.
4. Liberty and The Point entered to the Seventh LMA on September 1, 2010. However, the effective date of the agreement was April 30, 2010. As a condition of the agreement, Liberty required Witherspoon to enter into an additional subordination agreement. Unlike the previous subordination agreements, the August 10, 2010 subordination agreement did not extend to any renewals or extensions of the indebtedness secured by Liberty’s deed of trust.
5. On September T, 2011, The Point executed the Eighth LMA, which had an effective date of April 30, 2010, identical to the Seventh LMA. Liberty executed the Eighth LMA on September 8, 2011. The Eighth LMA recited that it represented “the final agreement between the parties herein.”
6. Although Liberty apparently had in its possession the executed deed of trust against Blocks A, D and E called for pursuant to the Eighth LMA, it chose to foreclose on that property under the original deed of trust.
Although the parties can litigate as they choose on remand, it seems to me that this case boils down to whether Liberty prosecuted its foreclosure under a superseded deed of trust, whether the subordination agreement executed by Witherspoon in conjunction with the Seventh LMA remained effective,[7] whether Liberty is precluded from claiming priority by virtue of equitable doctrines raised by Witherspoon, and the effect, if any, of the fact that both the Seventh LMA and Eighth LMA have the very same effective date.

. "The unclean hand doctrine (also known as the clean hands doctrine) ‘stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.' Kirkman v. Stoker, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000) (quoting Gilbert v. Nampa Sch. Dist. No. 131, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983)). The present case is clearly a case in equity, both starting and ending as a proceeding to quiet title. Anderson v. Whipple, 71 Idaho 112, 121-22, 227 P.2d 351, 356 (1951), overruled on other grounds by David Steed & Assoc., Inc. v. Young, 115 Idaho 247, 766 P.2d 717 (1988).

. Reading between the lines of the district court’s decision, it appears that the determination of this issue was influenced by the court’s judicial estoppel holding. While it may well be that judicial estoppel has application to the broader question of whether Liberty may be estopped from asserting priority over Witherspoon, that broader issue was not addressed by the district court.

. Witherspoon’s third-party beneficiary argument does seem to be somewhat weak, but that is a matter for the district court to determine on remand. Of interest is the fact that Liberty is before the Court seeking relief as a third-party beneficiaiy of the subordination agreement between Witherspoon and The Point. Contrary to the district court’s assumption that the subordination agreement was between Liberty and Witherspoon, the agreement was actually between Witherspoon and The Point. If the issue of judicial estoppel is raised again on remand, it does not appear that a contractual relationship is required for that theory. A & J Construction Co., Inc. v. Wood, 141 Idaho 682, 686, 116 P.3d 12, 16 (2005).

. It seems to me that little consideration was given to the actual subordination agreement, as shown by the fact that Liberty was assumed to be a contracting party. A subordination agreement does not change the dates of recording of trust deeds but, rather, pertains to the priority of payment. "|Tlhe general thrust of a subordination agreement ... is the subordination of the right to receive payment of certain indebtedness (the 'subordinated debt’) to the prior payment of certain other indebtedness (the ‘senior debt’) of the same debtor.” Blickenstaff v. Clegg, 140 Idaho 572, 581, 97 P.3d 439, 448 (2004). But for the subordination agreement, Witherspoon would have priority.