**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 42993**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | 2015 Unpublished Opinion No. 472 |
| | ) | |
| **Plaintiff-Respondent,** | ) | Filed: April 6, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| **MARVIN GORDON CROTTO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Order denying motion to suppress, vacated and case remanded.

Sara B. Thomas, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Marvin Gordon Crotto appeals from the district court's judgment of conviction, asserting the district court erred in denying his motion to suppress. We vacate and remand.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Officers Keely and Reimers conducted a knock and talk in response to an anonymous tip concerning possible drug activity at a Boise home. Crotto answered the door and let the officers into his home. Crotto and another man were present in the home. Officer Keely told Crotto the officers were responding to an anonymous tip concerning possible illegal, drug-related activity occurring in the home, based on the unusual number of visitors frequenting the residence throughout the week.

Crotto explained the traffic was resultant of regular visits of his PSR[1] worker, therapists, other service providers, and a small number of friends. Officer Keely asked what disabilities Crotto had, to which Crotto responded, "kind of mental." Officer Keely and Crotto continued discussing the issue of drug activity, and Crotto admitted he smoked marijuana in the past and he still occasionally smoked with friends.

Officer Keely asked Crotto for permission to search the residence for evidence of drug activity, based on the tip and Crotto's admissions. Crotto denied permission, citing privacy concerns. Officer Keely asked why Crotto refused to consent to a search and stated that he wanted to resolve the complaint with Crotto's cooperation. Crotto continued to resist Officer Keely's requests to search. Officer Keely asked Crotto to retrieve the marijuana and drug paraphernalia currently in his bedroom. Crotto agreed, but then resisted when the officers insisted that Officer Reimers accompany him for safety reasons. Eventually, Crotto acquiesced when Officer Reimers agreed to stand in the doorway, but not enter the bedroom. Crotto then retrieved a marijuana pipe from the bedroom.

After receiving the pipe, the officers continued to press Crotto to turn over any other drugs or paraphernalia in his possession. Crotto again agreed to the request and retrieved, still accompanied by Officer Reimers, a small amount of marijuana from a safe in his bedroom. The officers continued to press Crotto for permission to search but Crotto again denied permission, becoming audibly more anxious and distressed. After turning over some more marijuana, Crotto admitted to having pills everywhere and one or more grinders. He then stated several times that he wanted to go to Intermountain (a mental health treatment facility). The officers told Crotto that he was free to go to Intermountain, but that would likely result in the officers submitting an application for a search warrant. The officers stated they would prefer to close the investigation with Crotto's voluntary assistance.

The officers told Crotto several times that he was not under arrest. Additionally, throughout the encounter, the officers repeatedly told Crotto that his reluctance to grant permission to the search, and his escalating anxiety, indicated that there was contraband in the home. The officers repeatedly assured Crotto throughout the encounter that they would not take him to jail that day and that Crotto's cooperation would be noted in the officers' reports. Crotto

---

[1]     Psychosocial Rehabilitation Worker, a worker employed by the state to help take care of individuals with disabilities.

2

eventually allowed Officer Reimers to search the bedroom safe, and Officer Reimers discovered various additional items of paraphernalia and methamphetamine. The investigation lasted approximately fifty minutes.

The State charged Crotto with three crimes: felony possession of a controlled substance, methamphetamine; felony possession of a controlled substance, marijuana, with the intent to deliver; and misdemeanor possession of drug paraphernalia. Crotto filed a motion to suppress evidence seized as a result of the search of his safe, arguing that consent to search was the result of duress and coercion. After a hearing, the district court denied Crotto's motion to suppress. The district court held that the officers used sharp investigative tactics that never strayed beyond the confines of the law and there was no indication that Crotto's mental health rendered him unable to validly consent to the search of the safe. Crotto timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Crotto argues that the district court erroneously denied his motion to suppress evidence seized as a result of the search of his safe, because the district court's determination that Crotto gave voluntary consent to search the safe was clearly erroneous based on the totality of the circumstances. Specifically, Crotto argues the district court's factual findings regarding consent are unsupported by the evidence in the record because Crotto tried to withdraw his consent numerous times, his mental abilities rendered him incapable of providing voluntary consent, and the officers used Crotto's mental health issues to coerce Crotto into providing consent.

3

The State argues that most of the evidence produced during the investigation--the drug paraphernalia, the methamphetamine, and the marijuana--was not the result of a search, but instead, was produced by Crotto before he consented to a search of the safe and, therefore, would not be suppressed even if the consent to search the safe was involuntary.[2] The State further argues the district court correctly determined there was no basis to suppress the evidence obtained from the search.

The district court found both that Crotto "never asked the officers to leave" and that until Crotto allowed an officer to search the safe, Crotto "repeatedly refused to consent to direct requests by [the officer] to search, and the officers honored his refusal." According to the district court, both facts weighed in favor of the legality of the search. The district court disagreed that the officers "took advantage of what they knew or believed to be [Crotto's] diminished capacities so as to coerce [his] consent or that [Crotto] (objectively speaking) was unable to validly consent due to his mental condition(s)." The district court found that while the officers used "sharp tactics," those tactics did not invalidate Crotto's subsequent consent. However, because the district court's finding that Crotto never asked the officers to leave is clearly erroneous, and that factual finding was relevant and material to the district court's determination that consent was voluntary, we reverse on that issue. We decline to address the other issues raised by Crotto.

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *VanderWal v. Albar*, *Inc.*, 154 Idaho 816, 821, 303 P.3d 175, 180 (2013) (quoting *Argosy Trust ex rel. Its Trustee v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005)). "Factual findings are not clearly erroneous if they are supported by substantial and competent evidence, which is evidence that a reasonable trier of fact could accept and rely upon in determining that such facts have been proved." *VanderWal*, 154 Idaho at 821, 303 P.3d at 180.

Whether Crotto asked the officers to leave his home is relevant to two issues: whether he revoked consent for the officers to be in the home, and whether his consent to search the safe was voluntary. Crotto did not raise the first issue in the district court or on appeal; thus, it will not be addressed by this Court. Instead, the Court will only analyze whether Crotto requested the

---

[2] To be clear, before the search of the safe, Crotto produced some paraphernalia and marijuana. The search of the safe disclosed additional paraphernalia and a small baggie of methamphetamine.

officers leave his home as a factor in determining whether his consent to search the safe was voluntary.

After Crotto first agreed to retrieve contraband from his bedroom, the officers insisted that one of them accompany Crotto. Crotto refused and proposed the officers wait outside the bedroom while he retrieved the items. The officers refused because it did not alleviate their safety concerns. Crotto then stated, "I just don't want you in my house. It's just quite simple. You guys are making me nervous." The officers pressed Crotto and suggested that he was reluctant to let an officer accompany him because he had more contraband than he previously admitted. Crotto indicated it had nothing to do with contraband, he "just [didn't] want you in my room. It's my room I got [sic] all my stuff lay out. Personal stuff." After further "sharp tactics," Crotto turned over some contraband and the officers again sought consent to search. Crotto stated, "No. He is not going to check. Nothing else. You guys are done [sic] what you're gonna do."

In *State v. Staatz*, 132 Idaho 693, 696, 978 P.2d 881, 884 (Ct. App. 1999), we determined that a request to wait outside constituted a request to leave. In *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004), we determined that a typical reasonable person would have understood that Thorpe was asking the officers to leave when she told the officers that her attorney wanted the officers to stop searching if they did not have a warrant. Based on these cases and the statements made by Crotto, the district court's finding that Crotto never asked the officers to leave is not supported by substantial and competent evidence and thus, is clearly erroneous.

This district court determined Crotto's statements weighed in favor of the legality of the search. But, because the district court did not recognize the statements as a request to leave the house, the district court's factual finding that Crotto never asked the officers to leave is clearly erroneous. This clearly erroneous factual finding was a relevant and material fact that influenced the district court's ultimate conclusion that Crotto's consent to search the safe was voluntary. Had the court correctly analyzed this relevant fact, we cannot say the district court would have reached the same conclusion.

## IV.

## CONCLUSION

Based on the foregoing, we vacate the district court's order denying the motion to suppress and the judgment of conviction and remand the case for further proceedings consistent with this opinion.

Judge GUTIERREZ and Judge GRATTON **CONCUR**.